## Richmond

### JOHN ROBERT BALLARD

### V.

### COMMONWEALTH OF VIRGINIA

Record No. 831519.

October 12, 1984.

Present: All the Justices.

*Sterling H. Moore (Craig S. Cooley; Haskins & Moore; Brown, Bruner & Cooley,* on brief), for appellant.

*James E. Kulp, Senior Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This appeal involves a constitutional challenge to the Virginia procedure in criminal cases whereby an adult tried by jury has his sentence fixed by the jury, Code § 19.2-295,[1] while a juvenile transferred to circuit court and tried by jury has his sentence fixed by the judge, Code § 16.1-272.[2] The question for decision is whether the denial of jury sentencing to juveniles deprives them of equal protection, rendering Code § 16.1-272 unconstitutional.

This question arose in the case of John Robert Ballard, a juvenile who was transferred to circuit court for trial as an adult on a charge of capital murder in the commission of robbery while armed with a deadly weapon. Code § 18.2-31(d). Ballard was tried by jury and convicted of first degree murder. Thereafter, the trial judge sentenced Ballard to life imprisonment.[3]

The record shows that Ballard, then aged seventeen, planned with three accomplices to enter the home of John Edward Lawler and steal his property. Upon arrival at the Lawler residence on the evening of December 30, 1982, one of the accomplices gave Ballard a pair of bolt cutters and told him "to go in the house and knock [Lawler] out." Ballard complied, entering the house and striking Lawler numerous times while an accomplice stole the victim's property. Lawler died from his injuries.

On appeal, Ballard contends that when the Commonwealth grants adults the right to have their sentences fixed by juries but denies juveniles the same right, the denial offends the Equal Protection Clause of the Fourteenth Amendment. This discrimina-

---

[1] § 19.2-295. Ascertainment of Punishment. — Within the limits prescribed by law, the term of confinement in the penitentiary or in jail and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury, or by the court in cases tried without a jury.

[2] § 16.1-272. Power of circuit court over juvenile offender. — A. In the hearing and disposition of felony cases properly before a circuit court having criminal jurisdiction of such offenses if committed by an adult, the court, after giving the juvenile the right to a trial by jury on the issue of guilt or innocence and upon a finding of guilty, may sentence or commit the juvenile offender in accordance with the criminal laws of this State or may in its discretion deal with the juvenile in the manner prescribed in this law for the hearing and disposition of cases in the juvenile court.

B. If the circuit court decides to deal with the juvenile in the same manner as a case in the juvenile court and places the child on probation, the child may be supervised by a juvenile probation officer.

[3] This appeal does not involve, and we do not decide, the question whether a juvenile who is convicted by a jury of capital murder should be sentenced by the judge in accordance with § 16.1-272 of the juvenile court law or by the jury pursuant to §§ 19.2-264.3 and -264.4 of the death penalty statutes.

tion, Ballard says, allows an adult "two bites of the sentencing apple," that is, an adult has the right to have the jury fix his sentence and then, if he considers the sentence too harsh, he may request a presentence report and ask the court to reduce the sentence or consider alternatives to incarceration. On the other hand, Ballard maintains, a juvenile tried as an adult is denied the "first 'bite of the apple,' " *viz.*, jury sentencing, and "is limited to the sentence imposed by the trial judge." Obviously, Ballard submits, "such a limitation is both unreasonable and unfair."

Continuing, Ballard argues that the strict scrutiny test, requiring the demonstration of a compelling state interest, applies to this case and controls the question whether the classification of juveniles created by Code § 16.1-272 passes constitutional muster. Ballard acknowledges that the strict scrutiny test applies only when a classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a "suspect" class. Ballard concedes, and we agree, that juveniles do not constitute a "suspect" class. *State* v. *Rice*, 98 Wash. 2d 384, 399, 655 P.2d 1145, 1154 (1982). Ballard contends, however, that the right to jury sentencing is fundamental.

Ballard argues that the right to a jury trial on the issue of guilt or innocence is fundamental and that when the Commonwealth expands this right to include jury sentencing for the adult segment of the population, jury sentencing itself becomes a fundamental right. Ballard then asserts that, absent a showing of a compelling state interest, the Commonwealth cannot withhold from juveniles tried as adults the right to jury sentencing. Ballard finally says that because the Commonwealth has not shown a compelling state interest in the subject matter of the classification at issue, the classification must be stricken and Code § 16.1-272 declared unconstitutional.

■ We disagree with Ballard. While the right to jury trial on the issue of guilt or innocence is a fundamental one, *Duncan* v. *Louisiana,* 391 U.S. 145, 157-58 (1968), it does not necessarily follow that, merely because the Commonwealth grants one segment of the population the right to jury sentencing, this latter right is also fundamental. A fundamental right is one explicitly or implicitly guaranteed by the Constitution. *See San Antonio School District* v. *Rodriguez,* 411 U.S. 1, 33-34 (1973). Yet, Ballard admits that he has found no case which holds that jury sentencing is a constitutionally guaranteed right, and we have found

none. This void in decisional law becomes especially noteworthy when it is considered that neither in the federal system nor in most states is jury sentencing permitted.

Furthermore, Ballard concedes, as, indeed, he must, that the General Assembly could at will withdraw from adults the right to jury sentencing and thus eliminate the differential treatment of which he complains. But, if the right to jury sentencing is fundamental, it could not be treated in such a fashion; the legislative withdrawl of a fundamental right, if challenged, would require the showing of a compelling state interest.

In our opinion, the right granted adults in Virginia to have their sentences fixed by juries is purely statutory in both origin and nature. Any complaint Ballard may have, therefore, must be based, not upon a purported deprivation of a fundamental right, but upon an alleged denial of equal protection resulting from the fact that a statutory right granted others has been withheld from the class of which he is a member. And, in determining whether this withholding is permissible, we do not apply the strict scrutiny test but one directed toward ascertaining whether a rational basis exists for the statutory classification in which Ballard has been placed. *See Vance* v. *Bradley*, 440 U.S. 93, 97 (1979). In applying the rational basis test, courts will not overturn a statutory classification on equal protection grounds unless it is so unrelated to the achievement of a legitimate purpose that it appears irrational. *Id.*

■ We believe a rational basis does exist for the classification in question. Code § 16.1-227, part of the juvenile court law, provides that "in all proceedings the welfare of the child . . . is the paramount concern of the State." Hence, juveniles enjoy a privileged status in the law, a status not enjoyed by adults. While, for the purpose of determining guilt or innocence, a transferred juvenile is treated as an adult, and although he may be subject to adult penalties in the sentencing phase of his case, Code § 16.1-272 permits a circuit court to treat him in all respects as a juvenile, with full panoply of beneficent alternatives available in juvenile court, including the use of a juvenile probation officer.

The Commonwealth's singular concern for juveniles and the special treatment they may be afforded when they are tried as adults should be sufficient to demonstrate the rational basis of the statutory classification in question. Ballard argues, however, that the Commonwealth's concern for the welfare of children could be satisfied by permitting the sentence of a transferred juvenile to be

fixed by the jury and then allowing the court to explore all the alternatives for disposition the law now allows.

Several observations come to mind, however, concerning this argument. First, the choice of sentencing procedures is a matter for legislative determination. Second, in enacting Code § 16.1-272, the General Assembly obviously opted for judge-sentencing for transferred juveniles because it perceived the "inability of juries to adequately comprehend the differences in the sentencing of a juvenile defendant as an adult, and the treatment of that same child within the framework of the juvenile court laws." Hopper & Slayton, *The Revision of Virginia's Juvenile Court Law,* 13 U. Rich. L. Rev. 847, 868 (1979). Finally, although the sentencing plan proposed by Ballard might have merit, the particular sentencing procedure chosen by a state "does not run foul of the Fourteenth Amendment because another method may seem . . . to be fairer or wiser or to give a surer promise of protection to the prisoner at the bar." *Snyder* v. *Massachusetts,* 291 U.S. 97, 105 (1934); *see also McGautha* v. *California,* 402 U.S. 183, 221 (1971).

Finding no deprivation of constitutional right in this case, we will affirm the judgment of the trial court.

*Affirmed.*