**Salem**

GEORGE CLINTON SMITH

v.

COMMONWEALTH OF VIRGINIA

No. 0638-85

GEORGE CLINTON SMITH

v.

COMMONWEALTH OF VIRGINIA

No. 1002-85

TERRY IVEN SMITH

v.

COMMONWEALTH OF VIRGINIA

No. 0845-85

Decided February 17, 1987

COUNSEL

R. R. Ryder, for appellants.

Donald R. Curry, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — George Clinton Smith appeals his convictions of conspiracy to possess cocaine with intent to distribute (Record No. 0638-85) and possession of cocaine with intent to distribute (Record No. 1002-85). Terry Iven Smith appeals his conviction of conspiracy to possess cocaine with intent to distribute (Record No. 0845-85). On appeal, these cases have been consolidated as they raise the following identical issues: (1) whether a wiretap interception was valid under the "Virginia Wiretap Statute;" and (2) whether the "Virginia Wiretap Statute" is void for vagueness

and therefore, unconstitutional. For the reasons stated below, we affirm the convictions.

Pursuant to an investigation concerning illegal drugs, an order was entered by a judge of the Twenty-Second Judicial Circuit, which includes Franklin County, to tap certain phones in Franklin County. All physical alterations, including splices, relating to the wiretap were performed in Franklin County. The actual listening to and recording of the intercepted conversations occurred at a listening post in Henry County, which is outside the boundaries of the Twenty-Second Judicial Circuit. As a result of these wiretaps, evidence was obtained which led to appellants' arrests in Franklin County.

Pursuant to a motion for a change of venue made by the appellants and the Commonwealth, the cases were moved to Montgomery County. Prior to their trials, appellants moved the court to suppress the evidence obtained pursuant to the wiretaps because they alleged the interception of the incriminating telephone conversations was illegal. The court denied the motions. George Clinton Smith was tried by a jury and convicted on the conspiracy charge and sentenced to serve forty years in the penitentiary and pay a $25,000 fine. In a bench trial, George Clinton Smith also was convicted of the possession of cocaine and sentenced to a concurrent term of forty years in the penitentiary and to pay a $25,000 fine. Terry Iven Smith was tried by a jury and convicted of the conspiracy charge and sentenced to serve twenty-five years in the penitentiary and to pay a $25,000 fine.

## I.   The Wiretap Issue

Appellants first argue that the intercepted conversations introduced at trial should have been suppressed because they were obtained in contravention of Chapter 6 of Title 19.2 of the Code of Virginia, entitled "Interception of Wire or Oral Communications." Specifically, appellants argue that the order obtained pursuant to Code § 19.2-66, which authorized the intercept of wire communications, was invalid. Code § 19.2-66 details when the Attorney General may apply for a wiretap authorization and provides in pertinent part:

The Attorney General or Chief Deputy Attorney General, if the Attorney General so designates in writing, in any case

where the Attorney General is authorized by law to prosecute or pursuant to a request in his official capacity of an attorney for the Commonwealth in any city or county, *may apply to a judge of competent jurisdiction for the jurisdiction where the proposed intercept is to be made* for an order authorizing the interception of wire or oral communications by the Department of State Police, when such interception may reasonably be expected to provide evidence of the commission of a felonious offense . . . .

\* \* \*

Such application shall be made, and such order may be granted, in conformity with the provisions of § 19.2-68.

(emphasis added). Thus, the validity of the intercept order must be determined under the provisions of Code §§ 19.2-66 and 19.2-68.

Chapter 6 of Title 19.2 of the Code of Virginia contains two separate definitions of the term "intercept." Code § 19.2-61(3) contains a general definition of "intercept" and states: " 'Intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device." "Aural acquisition" means an acquisition by hearing. *See Cogdill v. Commonwealth*, 219 Va. 272, 277, 247 S.E.2d 392, 395 (1978). Appellants argue that this definition of "intercept" is applicable throughout the entire statute. Accordingly, they assert there is no "intercept" until the conversations are actually overheard. *See id.* ("interception" means "an acquisition by overhearing"). Applying this interpretation to their case, appellants contend that the "intercept" occurred at the Henry County listening post where the conversations were heard and recorded and thus, the intercept order was invalid as it was entered by a judge in Franklin County. As discussed below, Code § 19.2-68 was amended in 1980 and a second definition of "intercept" was added. As *Cogdill* was decided two years prior to the statutory amendment which added the second definition of "intercept," *Cogdill* provides minimal guidance for the resolution of the issue in this case.

The second definition of "intercept" added in 1980 and contained in Code § 19.2-68(3)(e) provides in pertinent part:

A wire or oral communication shall be deemed to be intercepted . . . in the jurisdiction where the communication is actually intercepted and the monitoring of such intercepted communication may be at any location within the Commonwealth of Virginia. *For the purposes of this section, the definition of "intercept" means the acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical or other device.*

(emphasis added). Code § 19.2-68 outlines the procedural requirements of a wiretap application and clearly qualifies Code § 19.2-66 which provides in pertinent part: "Such application shall be made, and such order may be granted, in conformity with the provisions of § 19.2-68." Thus, the Commonwealth argues and we agree that § 19.2-66, which delineates the parties who may initiate an application for a wiretap and the crimes for which a wiretap can be obtained, is subordinate to and must be read with Code § 19.2-68. Thus, this definition of "intercept" applies to both Code §§ 19.2-66 and 19.2-68. For purposes of these sections, "intercept" means the physical act (such as splicing) by which the interceptor gains the ability to exercise dominion and control over the communication.

In support of this we note that subsection (e) was added to the statute in 1980. *See* Ch. 244, Acts of Assembly of 1980. Prior to this amendment, "intercept" was defined in Code § 19.2-61(3) and meant an "aural acquisition." Under that definition, a wiretap order could only be entered by a judge sitting in the jurisdiction where the conversation would be heard. Thus, the Commonwealth points out that a wiretap order could be entered, for example, in Richmond, where the listening post would be located, while the actual conversation might occur in Franklin County. This would deprive the local authorities of knowledge of the investigation involving their jurisdiction. To avoid this result, the General Assembly enacted Code § 19.2-68(3)(e), defining "intercept" as the physical act of acquiring the means to intercept the conversation. As Code § 19.2-66 must conform with the requirements of Code § 19.2-68, we hold that the "intercept" in the instant case occurred in Franklin County when the telephone line was broken

and the splicing occurred. While we recognize that these intercepted conversations could not have been transcribed but for the listening post in Henry County where they were monitored, we note that these conversations could not have been monitored *anywhere* but for the physical alterations or "intercept" in Franklin County.

■ This interpretation of "intercept" is reinforced by the additional language of Code § 19.2-68(3)(e) which states: "[M]onitoring of such intercepted communication may be at any location within the Commonwealth of Virginia." Although "monitor" is undefined by the statute, it is clear that in this context the legislature intended to distinguish between the terms "intercept" and "monitor." Under established principles we note that "[n]ontechnical words in statutes are taken to have been used in their ordinary sense and acceptation." *Gomes v. City of Richmond*, 220 Va. 449, 452, 258 S.E.2d 582, 584 (1979)(quoting *Board of Supervisors v. Boaz*, 176 Va. 126, 130, 10 S.E.2d 498, 499 (1940)). "Monitor" is defined as "to watch, observe, or check; to keep track of, regulate, or control the operation of." Webster's Ninth New Collegiate Dictionary (1984).

■ In summary, we find that the interception of the conversations occurred in Franklin County and was authorized by an order obtained pursuant to Code §§ 19.2-66 and 19.2-68. Additionally, we hold that the monitoring of these conversations occurred in Henry County and was authorized pursuant to Code § 19.2-68(3)(e). Accordingly, we hold that the trial court properly denied appellants' motion to suppress.

## II. The Constitutional Issue

Appellants next argue that the "Virginia Wiretap Statute" is void for vagueness and therefore unconstitutional. Specifically, appellants argue that the two definitions of "intercept" within the statute render it ambiguous. Further, they argue that the terms "monitor" and "acquisition" are undefined. They contend that a fundamental tenet of constitutional law is that criminal statutes must be reasonably definite as to persons and conduct within their purview so that men of ordinary intelligence will not have to guess at their meaning and application. *United States v. Chatman*, 538 F.2d 567, 568-69 (4th Cir. 1976). For this reason, appellants urge

us to find this statute unconstitutional.

Upon examination of the record before us, however, we find that this issue was not presented to the trial court and is therefore improperly before this court. Rule 5A:18. Accordingly, we decline to consider this issue on appeal.

However, we do note that the void-for-vagueness doctrine requires particular scrutiny of penal statutes to protect against arbitrary and discriminatory enforcement without fair warning that an act is prohibited. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). The challenged portions of the "Virginia Wiretap Statute," however, are not penal in nature. Rather, those sections simply prescribe the procedure for obtaining and conducting a wiretap. Thus, the void-for-vagueness doctrine is not applicable.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Affirmed.*

Hodges, J., and Moon, J., concurred.