## DAIRYLAND INSURANCE COMPANY

## V.

## NICKOLAS ANTHONY SYLVA, ET AL.

Record No. 901541

September 20, 1991

Present: Carrico, C.J., Compton, Stephenson, Russell,* Whiting, and Lacy, JJ., and Poff, Senior Justice

*James A. Howard, II (Howard & Howard*, on brief), for appellant.

*Lance A. Jackson (Edward L. Breeden, III*, on brief), for appellee Allstate Insurance Company.

No brief or argument for appellee Nickolas Anthony Sylva.

JUSTICE WHITING delivered the opinion of the Court.

In this declaratory judgment suit we determine whether the primary or the secondary underinsured motorist carrier is entitled to the Code § 38.2-2206(B) credit for the tort-feasor's liability coverage payment.

On July 27, 1989, Nickolas Anthony Sylva was injured when the motorcycle that he was operating was struck by a car driven by Matthew Rockstroh. Three insurance policies are involved in this case.

Allstate Insurance Company (Allstate) insured Rockstroh against liability for bodily injury, with a single bodily injury limit of $25,000. Dairyland Insurance Company (Dairyland) provided $25,000 uninsured motorist coverage to Sylva while operating his motorcycle, and Allstate provided an identical amount of the same coverage to Sylva as a named insured in a policy issued to Sylva's wife.

During settlement negotiations, the parties tentatively agreed to settle Sylva's claim for $50,000. The insurance companies and Sylva agreed that, pursuant to the provisions of Code § 38.2-2206(B), if Allstate's $25,000 liability coverage on Rockstroh's vehicle were tendered to Sylva, it should be credited against Sylva's claim for underinsured motorist coverage. They also agreed that, because of the credit, Sylva was entitled to recover only $25,000 of his underinsured motorist coverage.

Because Allstate and Dairyland each claimed the benefit of the credit, they could not agree which of them would be liable to pay the remaining $25,000 of the proposed $50,000 settlement. Accordingly, Sylva filed this suit against Allstate and Dairyland to obtain a construction of the statute and a determination of which carrier was obligated to pay his underinsured motorist claim should Sylva's case be settled for $50,000.

The parties submitted the matter to the trial court on the pleadings, stipulations of fact, and argument of counsel. The parties also stipulated "that the only issue to be determined by the court was the priority of said underinsured coverages and any credits on same as determined in accordance with [Code § 38.2-2206(B)]."

The trial court held that Dairyland "is the company which is primarily responsible for the payment of the underinsured motorist payment . . . ." Dairyland appeals.

In pertinent part, Code § 38.2-2206(B) provides:

A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury . . . coverage applicable to the operation or use of the motor vehicle and available for payment for such bodily injury . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.

"Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury . . . .

*If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:*

1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;

2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;

3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured.

Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be proportioned as to their respective underinsured motorist coverages.

Recovery under the endorsement or provisions [of the policies providing underinsured motorist protection] shall be subject to the conditions set forth in this section.

(Emphasis omitted; emphasis added.)

■ If statutory "language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it." *Brown* v. *Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). And, unless a literal construction of that language would result in internally conflicting statutory provisions amounting to a manifest absurdity, the "courts cannot [adopt] a construction which amounts to holding the legislature did not mean what it has actually expressed." *Watkins* v. *Hall*, 161 Va. 924, 930, 172 S.E. 445, 447 (1934) (quoting *Floyd* v. *Harding*, 69 Va. (28 Gratt.) 401, 405 (1877)); *accord*, *Barr* v. *Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990).

■ We find the language of Code § 38.2-2206(B) to be clear and unambiguous. Read literally, it makes Dairyland the primary uninsured/underinsured motorist carrier and requires that Rockstroh's $25,000 liability coverage be credited against Dairyland's and Allstate's respective $25,000 underinsured motorist coverages "in the following order of priority: [first to] [t]he policy covering a motor vehicle occupied by the injured person . . . ." Here, Dairyland's policy covered the motorcycle "occupied" (ridden) by Sylva and, under a literal reading of the statute, Dairyland would thus be entitled to priority in the credit for Rockstroh's liability coverage.

Allstate, however, contends that because Sylva was not "entitled to underinsured motorist coverage under more than one policy," the statutory priority provisions do not apply in this case. Under Allstate's theory, the credit is *first* deducted from Sylva's entitlement to underinsured motorist coverage, reducing that entitlement to $25,000, the coverage of only one policy—that of Dairyland, the primary carrier.

There are two flaws in this reasoning. First, the emphasis of the disputed portion of the statute is upon an injured person's entitlement to multiple underinsured motorist coverage. *After* a determination of such an entitlement, the statute then fixes the multiple carriers' order of liability and finally designates the priority of each carrier in the credit. Second, Allstate's premise confuses Sylva's entitlement to underinsured motorist *coverage* with his entitlement to *payment* from one of his underinsured motorist carriers. Sylva is entitled to coverage under both policies, but he may be paid under only one of them because of the statute's credit allocation.

Next, Allstate contends that if, as we have held, the provisions of the statute are read to give Dairyland priority in the credit, it would create a conflict in its provisions and thus result in an absurdity. We do not agree.

A conflict arises in a document only when it deals inconsistently with the same subject matter. Here, the statutory allocation of liability among the members of the group is one matter and the allocation of a credit against that liability arising from an outside source is a different matter.

■ Finally, Allstate argues that because of Dairyland's primary liability to pay Sylva's underinsured motorist claim, an award of the credit to Dairyland would be illogical. However, where the

disputed provisions of a statute are plain and unambiguous, as these are, we are not concerned with the logic or wisdom of the legislature; we apply the statute as written. *See City of Portsmouth* v. *City of Chesapeake*, 232 Va. 158, 163, 349 S.E.2d 351, 353 (1986); *Carter* v. *Nelms*, 204 Va. 338, 346, 131 S.E.2d 401, 406 (1963). And, any statutory credit a particular carrier receives against that liability is a discretionary matter to be determined by the legislature, and not by the courts. *See Heublein, Inc.* v. *Department of Alcoholic Beverage Control*, 237 Va. 192, 201, 376 S.E.2d 77, 81 (1989).

In sum, we are of opinion that the clear and unambiguous statutory language requires allocation of the credit to Dairyland, the carrier that had the primary obligation to pay Sylva's underinsured motorist claim. Accordingly, we conclude that the trial court erred in holding that Dairyland would be responsible for payment of Sylva's underinsured motorist claim, should his claim against Rockstroh be settled for $50,000.

Therefore, we will reverse the judgment of the trial court and remand the case for entry of a declaratory judgment consistent with this opinion.

*Reversed and remanded.*