Alexandria
JOEL IRVIN LAST, M.D.
v.
VIRGINIA STATE BOARD OF MEDICINE
No. 1019-91-4
Decided July 28, 1992

COUNSEL

Jeanne F. Franklin (John D. Grad; Grad, Logan & Klewans, on briefs), for appellant.

Lynne Fleming, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

MOON, J.—Dr. Joel I. Last appeals a decision of the Circuit Court of Arlington County upholding the Virginia State Board of Medicine's (Board)[1] interpretation and application of Code § 54.1-2930, a state medical licensure statute. The Board denied medical licensure by endorsement to Dr. Last because it found that his clinical rotations did not meet the requirements of Code §

---

[1] The Virginia Board of Medicine is a state "[a]gency [which] means any authority, instrumentality, officer, *board* or other unit of state government empowered by the basic laws to make regulations or decide cases." *See* Code § 9-6.14:4(A) (emphasis added).

54.1-2930(4),[2] as amended, and Board regulation VR 465-02-01, Part IV, 4.1(B)(2)[3] because the rotations were not completed in American hospitals offering approved residency programs or in

---

[2]   Code § 54.1-2930. *Requirements for admission to examination.*—The Board may admit to examination for licensure to practice medicine, osteopathy, chiropractic and podiatry any candidate who has submitted satisfactory evidence verified by affidavits that he:

1.   Is eighteen years of age or more;

2.   Is of good moral character;

3.   Has successfully completed all or such part as may be prescribed by the Board, of an educational course of study of that branch of the healing arts in which he desires a license to practice, which course of study and the educational institution providing that course of study are acceptable to the Board; and

4.   Has completed one year of satisfactory *postgraduate training* in a hospital approved by an accrediting agency recognized by the Board for internships or residency training. . . . In determining whether such course of study and institution are acceptable to it, the Board may consider the reputation of the institution and whether it is approved or accredited by regional or national educational or professional associations including, but not limited to, such organizations as the Accreditation Council of Graduate Medical Education or other official accrediting body recognized by the American Medical Association, by the Committee for the Accreditation of Canadian Medical Schools or their appropriate subsidiary agencies, by any appropriate agency of the United States government, or by any other organization approved by the Board. *Supervised clinical training which is received in the United States as part of the curriculum of a foreign medical school shall be obtained in an approved hospital, institution or school of medicine offering an approved residency program in the specialty area for the relevant clinical training. The Board may also consider any other factors that reflect whether that institution and its course of instruction provide training sufficient to prepare practitioners to practice their branch of the healing arts with competency and safety in the Commonwealth.*
(Emphasis added).

[3]   The following are the pertinent provisions of the regulation:

§ 4.1. Licensure by Endorsement.

A. An applicant for licensure by endorsement will be considered on his merits and in no case shall be licensed unless the Credentials Committee is satisfied that he has passed an examination equivalent to the Virginia Board of Medicine examination at the time he was examined and meets all other requirements of the Virginia Board of Medicine.

B. A Doctor of Medicine who meets the requirements of the Virginia Board of Medicine and has passed the examination of the National Board of Medical Examiners, FLEX, or the examination of the Licensing Medical Council of Canada may be accepted for licensure by endorsement without further examination. No applicant for licensure to practice medicine and surgery by endorsement will be considered for licensure unless the applicant has met all the following requirements for pre or postgraduate training as follows:

\* \* \*

2. Graduates of schools of medicine not approved by an accrediting agency recognized by the board who served supervised clinical training in the United States as part of the curriculum of a foreign medical school, shall serve the clerkships in an approved hospital, institution or school of medicine offering an *approved residency program* in the specialty area for the clinical training received.

hospitals where students from American medical schools were receiving training. The Board interpreted Code § 54.1-2930 to deprive the Board of discretion and to require a denial of licensure by endorsement because Dr. Last's clinical training was not received in a hospital with an approved residency program. We hold that Code § 54.1-2930(4) does not give the Board discretion to waive the requirement that the clinical training be received in an approved hospital even if other factors show that an applicant has received medical training sufficient to prepare that applicant to practice medicine in the Commonwealth of Virginia.

Dr. Last graduated from an offshore medical school, the American University of the Carribean. While he was a student there, he did clinical rotations in the United States at hospitals that did not have approved residency programs. He testified before the credentials committee of the Board that neither of the hospitals where he did his rotations had residents from American medical schools.[4]

The Board argues that, by using the word "shall" in the applicable portion of Code § 54.1-2930(4), the General Assembly imposed a mandatory requirement that licensure applicants enrolled in foreign medical schools successfully complete supervised clinical training, or "rotations," in "an approved hospital, institution or school of medicine offering an approved residency program in the specialty area for the relevant clinical training." Code § 54.1-2930(4).

The final sentence of Code § 54.1-2930(4) permits the Board to consider other factors:

The Board *may* also consider any other factors that reflect whether *that institution* and its course of instruction provide

---

Licensure by Endorsement, Part IV, § 4.1, Regulations Governing the Practice of Medicine, Osteopathy, Podiatry, Chiropractic, Clinical Psychology, and Acupuncture, 6:8 Va. R. 1151 (January 15, 1990). (Emphasis added).

VR 465-02-01, Part IV, 4.1(B)(2), like the last sentence of Code § 54.1-2930 requires that applicants have completed approved clinical training. Thus, by its plain meaning and title, Licensure by Endorsement, this section equates the requirements for licensure by endorsement with the requirements for licensure by examination. Dr. Last conceded in his brief that this regulation "concerning the clinical rotation/residency issue do[es] read as a mandatory requirement. . ."

[4] Dr. Last also testified that he had "no choice" in selecting rotations because he was assigned to the hospitals by his medical school. Dr. Last testified that, when he took these rotations, he had "no idea" that he would practice in Virginia.

training sufficient to prepare practitioners to practice their branch of the healing arts with competency and safety in the Commonwealth.

Code § 54.1-2930(4) (emphasis added). The words "that institution" apparently refer to the institution noted in the previous sentence, the institution offering the clinical training. We interpret the last sentence of this statute to give the Board discretion to consider other factors that would indicate that the education and training received at the hospital or institution providing the clinical training were adequate to prepare an applicant-practitioner to practice in Virginia. This final sentence, however, does not change the meaning of the preceding sentence, that requires, in mandatory terms, that an applicant have completed his clinical studies in hospitals with approved residency programs.

■■■ If statutory "language is clear and unambiguous, there is no need for construction by the court; the plain meaning and intent of the enactment will be given it." *Brown v. Lukhard*, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985). Unless a literal construction of a statute would result in internally conflicting provisions amounting to a "manifest absurdity," courts cannot construe a statute in a manner that would result in holding the legislature did not mean what it actually expressed. *Dairyland Ins. Co. v. Sylva*, 242 Va. 191, 194, 409 S.E.2d 127, 129 (1991) (citations omitted). Where a statute is unambiguous, the plain meaning is to be accepted without resort to the rules of statutory interpretation. *Virginia Dep't of Labor & Indus. v. Westmoreland Coal Co.*, 233 Va. 97, 99, 353 S.E.2d 758, 760 (1987).

■■ The main purpose of statutory construction is to determine the intention of the legislature "which, absent constitutional infirmity, must always prevail." *Board of Supervisors v. King Land Corp.*, 238 Va. 97, 103, 380 S.E.2d 895, 897 (1989). The statute reveals the clear and unambiguous intent of the General Assembly. Dr. Last contends that to interpret the penultimate provision in the statute as imposing a mandatory requirement would place an unreasonable burden on him by requiring him to complete clinical rotations after he has completed four postgraduate training years and achieved licensure in other states. Dr. Last also argues that, had he been on notice, he could have sought to complete a satisfactory clinical program. Where a statute is

unambiguous by its terms, "we are not concerned with the logic or wisdom of the legislature; we apply the statute as written." *Sylva*, 242 Va. at 195-96, 409 S.E.2d at 130.

> In its ordinary signification, "shall" is a word of command, and is the language of command, and is the ordinary, usual, and natural word used in connection with a mandate. In this sense "shall" is inconsistent with, and excludes, the idea of discretion, and operates to impose a duty which may be enforced, particularly if public policy is in favor of this meaning, or when addressed to public officials, or where a public interest is involved . . . unless an intent to the contrary appears; but the context ought to be very strongly persuasive before it is softened into a mere permission.

*Andrews v. Shepherd*, 201 Va. 412, 414, 111 S.E.2d 279, 281 (1959). Non-technical words in statutes are interpreted as used in their ordinary sense and generally accepted meanings. *Smith v. Commonwealth*, 3 Va. App. 650, 655, 353 S.E.2d 159, 161, *appeal refused*, 363 S.E.2d 703 (Va. 1987). (citations omitted).

In reviewing the Board's decision, we must consider the experience and specialized competence of the Board acting in its licensing capacity and also consider the purpose of the licensing statute under which the Board acted. *See Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988). Simply stated, the purpose of Code § 54.1-2930 is to ensure that applicants for medical licensure in the Commonwealth meet certain minimum educational requirements, including "training sufficient to prepare practitioners to practice their branch of the healing arts with competency and safety in the Commonwealth." Code § 54.1-2930 (4).

We hold that the use of the word "shall" imposes a mandatory requirement of approved clinical rotations and that the last sentence of Code § 54.1-2930 does not permit the Board, in deciding whether to admit one to licensure, to consider "other factors" of an applicant's training once it determines that an applicant's supervised clinical training is insufficient.

■ In this case, the Board found Dr. Last's clinical rotations to be insufficient and thus it did not consider "other factors" that might support a finding that Dr. Last was adequately prepared to

practice medicine competently and safely in the Commonwealth of Virginia.

It is well settled that "[w]hen the word 'shall' appears in a statute it is generally used in an imperative or mandatory sense."

*Mayo v. Department of Commerce*, 4 Va. App. 520, 523, 358 S.E.2d 759, 761 (1987). Here, we can determine no reason to give "shall" a "permissive interpretation within the context of the simple and unambiguous language" in Code § 54.1-2930. *See id.* In considering the nature, context and purpose of the act, we find that the legislature intended that the word "shall" be treated as a mandate and not as merely advisory or directory. *See Huffman v. Kite*, 198 Va. 196, 203, 93 S.E.2d 328, 332 (1956).

Dr. Last argues that the Board improperly applied the statute retroactively because his undergraduate and clinical training was completed prior to the enactment of the 1988 amendment to Code § 54.1-2930. We disagree. The Board properly applied the regulation and the statutory law, including the amending language, in effect at the time Dr. Last's application was completed in March 1990. Dr. Last conceded in his brief that the amendment was in effect *before* his application for licensure.

Dr. Last also argues that Code § 54.1-2935[5] gives the Board discretion to permit three years of approved postgraduate training to "cure" or substitute for any applicant's unapproved undergraduate course of study. This section was not a basis for the Board's decision to deny Dr. Last licensure and this section was not at issue before the Board.[6]

---

[5] Code § 54.1-2935 provides: *Supplemental training or study required of certain graduates.*—In the event that a candidate has completed an educational course of study in an institution that is not approved by an accrediting agency recognized by the Board, the candidate shall not be admitted to any examination given by the Board until he has completed three years of satisfactory postgraduate training in a hospital approved by an accrediting agency recognized by the Board for internship or residency training. The Board may consider other postgraduate training as a substitute for up to two of the three years of required postgraduate training if it finds that such training is substantially equivalent to that required by this section.

[6] The dissent finds that the Board committed plain error in applying Code § 54.1-2930, which the dissent claims is inapplicable to the issue whether Dr. Last fulfilled the requirements of licensure by endorsement. We note that the dissent relies upon Code §

Dr. Last argues that, because there is no reasonable relation between the 1988 amendment to Code § 54.1-2930(4) and the public interest it purports to serve, the statute is arbitrary and discriminatory and a violation of his substantive due process and equal protection rights. Dr. Last has failed to demonstrate that he has a legitimate property interest[7] that has been affected by governmental action and he has failed to show that the actions of the Board violated procedural due process. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Here, there has been no violation of procedural due process because Dr. Last has received reasonable notice and has had an opportunity to be heard and appear with counsel before the Board and has had the opportunity to testify and present evidence.

■ The laws of Virginia and the Board's regulations regarding eligibility for licensure gave Dr. Last an interest and a claim to practice medicine to which procedural due process requirements applied. *See Goldsmith v. United States Bd. of Tax Appeals*, 270

---

54.1-2927(A) as the only provision in the statutes relevant to application for licensure by endorsement. Code § 54.1-2927(A) provides:

> The Board, in its discretion, may issue certificates or licenses to applicants upon endorsement by boards or other appropriate authorities of other states or territories or the District of Columbia with which reciprocal relations have not been established if the credentials of such applicants are satisfactory and the examinations and passing grades required by such other boards are fully equal to those required by the Virginia Board.

> The Board may issue certificates or licenses to applicants holding certificates from the national boards of their respective branches of the healing arts if their credentials, schools of graduation and national board examinations and results are acceptable to the Board. The Board shall promulgate regulations in order to carry out the provisions of this section.

Neither party made an argument below pertaining to Code § 54.1-2927(A). The record is completely devoid of any reference to this Code section. As a result, we decline to address the significance of this section as it pertains to this case. Dr. Last is free to make a new application for licensure by endorsement under Code § 54.1-2927.

[7] Dr. Last also contends that he has a liberty interest in his pursuit of professional licensure and that he has a right to pursue the occupation of his choice. Dr. Last's reliance on *Hampton v. Mow Sun Wong*, 426 U.S. 88 (1976), to support his claim of a liberty interest is misplaced. In *Hampton*, the Court held regulations of the Civil Service Commission that barred noncitizens, including lawfully admitted resident aliens, from federal employment unconstitutional as depriving resident aliens of liberty without due process. *Id.* at 116-17. Thus, *Hampton* involved the broad denial of employment opportunities to a defined class of citizens. *Id.* While a person has the freedom to *pursue* eligibility for a particular occupation, it does not follow that a person has an unrestricted right, without regard to his or her qualifications, to receive a license to engage in a particular profession.

U.S. 117, 123 (1926). The due process clause of the fourteenth amendment requires procedural safeguards only where a state deprives a person of a property or liberty interest. *Roth*, 408 U.S. at 569-70. However, Dr. Last has presented no legitimate claim of entitlement to licensure by endorsement grounded in a statute or regulation defining the requirements for licensure by endorsement. Dr. Last has no legitimate claim of entitlement and no vested right to obtain a medical license in Virginia or to pursue his profession in any state without regard to his medical training. Thus, Dr. Last's procedural due process claim fails.

■ Dr. Last contends he has been denied equal protection under the law. Under equal protection principles, distinctions may be drawn by legislatures if the distinctions bear some rational relationship to a legitimate state end.[8] Such distinctions may be set aside only if they are based solely on reasons totally unrelated to the pursuit of the state's goals and only if there are no grounds to justify them. *Clements v. Fashing*, 457 U.S. 957, 962-63 (1982); *see Ballard v. Commonwealth*, 228 Va. 213, 217, 321 S.E.2d 284, 286 (1984) (a court "will not overturn a . . . classification on equal protection grounds unless [the statute] is so unrelated to the achievement of a legitimate purpose that it [is] irrational"), *cert. denied*, 470 U.S. 1085 (1985). It is well settled that states have a legitimate interest in the health and welfare of their citizens. *See Barsky v. Board of Regents*, 347 U.S. 442, 449 (1954). States have a "wide discretion" to regulate the practice of medicine. *Id.*

Dr. Last has failed to establish that this case involves either a fundamental right or a suspect classification. The statute at issue here imposes a reasonable requirement that supervised clinical training received as part of the curriculum of a foreign medical school shall be obtained in an approved hospital offering an approved residency program in the specialty area for the relevant clinical training. Code § 54.1-2930(4) is reasonably related to the state's need to ensure that applicants for medical licensure in Virginia who are graduates of foreign medical schools have received the minimum education and training necessary to practice medicine safely and competently in the Commonwealth. It is clear

---

[8] Similarly, due process is satisfied if the statute in question is not arbitrary or discriminatory and has a reasonable relation to a proper purpose; a statute does not violate due process if it withstands this "rational basis" test. *Miller v. Locher Silica Corp.*, 12 Va. App. 1213, 1215-16, 408 S.E.2d 566, 567 (1991) (citations omitted).

from our reading of the statute that this minimum educational requirement includes the completion of clinical training at a hospital with an approved residency program.

Thus, based upon our review of the evidence and the entire record, we hold that the Board's decision and interpretation of the plain meaning of Code § 54.1-2930 should be upheld.

Accordingly, we affirm the final judgment of the Circuit Court upholding the Board's interpretation of Code § 54.1-2930(4) and its denial of licensure by endorsement to Dr. Joel I. Last.

*Affirmed.*

Baker, J., concurred.

Benton, J., dissenting.

Dr. Joel I. Last graduated from an offshore medical school. During his medical school studies, he was assigned to classroom clinical rotations at hospitals in the United States that did not have approved residency programs. Following his graduation, he completed a year of residency in a hospital with an approved program and then completed a three year postgraduate program in psychiatry at the Georgetown University Medical Center. Part of his duties at Georgetown included supervising and training medical students. Currently, Dr. Last is licensed as a physician in Pennsylvania and the District of Columbia. He is employed as a clinical instructor of psychiatry at the Georgetown University Medical Center and at the Veterans Administration Hospital. His duties include training medical students and psychiatry residents.

The credentials committee of the Board of Medicine recommended that Dr. Last's application for licensure by endorsement in Virginia be denied because he failed to meet "the requirement of . . . Code []§ 54.1-2930(4)."[9] After a formal hearing pursuant

---

[9]   Code § 54.1-2930 reads as follows:

§ 54.1-2930. Requirements for admission to examination. — The Board may admit to examination for licensure to practice medicine, osteopathy, chiropractic and podiatry any candidate who has submitted satisfactory evidence verified by affidavits that he:

1. Is eighteen years of age or more;

2. Is of good moral character;

3. Has successfully completed all or such part as may be prescribed by the Board, of an educational course of study of that branch of the healing arts in

to Code §§ 9-6.14:12 and 54.1-110, the Board accepted the committee's recommendation and voted to deny the application for licensure. It concluded "that Dr. Last has not met the requirements as set forth in Section 54.1-2930(4) of the Code and VR 465-02-01, Part IV, Section 4.1(B)(2) of the General Regulations of the Board."[10] On appeal, the circuit judge ruled that the Board did

which he desires a license to practice, which course of study and the educational institution providing that course of study are acceptable to the Board; and

4. Has completed one year of satisfactory postgraduate training in a hospital approved by an accrediting agency recognized by the Board for internships or residency training. At the discretion of the Board, the postgraduate training may be waived if an applicant for licensure in podiatry has been in active practice for four continuous years while serving in the military and is a diplomate of the American Board of Podiatric Surgery. Applicants for licensure in chiropractic need not fulfill this requirement.

In determining whether such course of study and institution are acceptable to it, the Board may consider the reputation of the institution and whether it is approved or accredited by regional or national educational or professional associations including, but not limited to, such organizations as the Accreditation Council of Graduate Medical Education or other official accrediting body recognized by the American Medical Association, by the Committee for the Accreditation of Canadian Medical Schools or their appropriate subsidiary agencies, by any appropriate agency of the United States government, or by any other organization approved by the Board. *Supervised clinical training which is received in the United States as part of the curriculum of a foreign medical school shall be obtained in an approved hospital, institution or school of medicine offering an approved residency program in the specialty area for the relevant clinical training.* The Board may also consider any other factors that reflect whether that institution and its course of instruction provide training sufficient to prepare practitioners to practice their branch of the healing arts with competency and safety in the Commonwealth.

(Emphasis added).

[10] The following are the pertinent provisions of the regulation:

§ 4.1. Licensure by endorsement.

A. An applicant for licensure by endorsement will be considered on his merits and in no case shall be licensed unless the Credentials Committee is satisfied that he has passed an examination equivalent to the Virginia Board of Medicine examination at the time he was examined and meets all other requirements of the Virginia Board of Medicine.

B. A Doctor of Medicine who meets the requirements of the Virginia Board of Medicine and has passed the examination of the National Board of Medical Examiners, FLEX, or the examination of the Licensing Medical Council of Canada may be accepted for licensure by endorsement without further examination. No applicant for licensure to practice medicine and surgery by endorsement will be considered for licensure unless the applicant has met all the following requirements for pre or postgraduate training as follows:

not err in interpreting Code § 54.1-2930(4) to limit its discretion as it pertained to its consideration of Dr. Last's application. Dr. Last contends that the Board failed to exercise its discretion in reviewing his application and that the rulings below reflect an error of law. *See* Code § 9-6.14:17. I agree that the Board committed an error of law.

The Board issues regulations pursuant to the authority granted by Code § 54.1-2400 for the administration of the basic laws contained in Code § 54.1-2900 *et seq.* The basic law authorizes the Board to issue licensure by endorsement as follows:

The Board, in its discretion, may issue certificates or licenses to applicants upon endorsement by boards or other appropriate authorities of other states or territories or the District of Columbia with which reciprocal relations have not been established if the credentials of such applicants are satisfactory and the examinations and passing grades required by such other boards are fully equal to those required by the Virginia Board.

The Board may issue certificates or licenses to applicants holding certificates from the national boards of their respective branches of the healing arts if their credentials, schools of graduation and national board examinations and results are acceptable to the Board. The Board shall promulgate regulations in order to carry out the provisions of this section.

Code § 54.1-2927(A).

In denying Dr. Last's application, the Board applied the criteria of Code § 54.1-2930, a statute that is inapplicable to the issue whether Dr. Last met the requirements for licensure by endorse-

* * *

2. Graduates of schools of medicine not approved by an accrediting agency recognized by the board who served supervised clinical training in the United States as part of the curriculum of a foreign medical school, shall serve the clerkships in an approved hospital, institution or school of medicine offering an approved residency program in the specialty area for the clinical training received.
Licensure by Endorsement, Part IV, § 4.1, Regulations Governing the Practice of Medicine, Osteopathy, Podiatry, Chiropractic, Clinical Psychology, and Acupuncture, 6:8 Va. R. 1151 January 15, 1990.

ment. Code § 54.1-2930, by its explicit terms, applies only to requirements for admission to take the medical examination. It does not apply to Dr. Last's application for licensure by endorsement. Simply stated, the Board committed plain error. The only provision in the basic law that is pertinent to application for licensure by endorsement is Code § 54.1-2927(A). Dr. Last was entitled to have his application judged by the criteria contained in that statute because he is licensed in Pennsylvania and the District of Columbia.

Prior to the enactment of Code § 54.1-2927 in 1988, Code § 54-310 gave the Board discretion to "arrange for reciprocity with . . . the District of Columbia and other states and territories . . . and issue certificates [of licensure] to applicants who have met such requirements."[11] That statute also gave the Board discretion to issue certificates of licensure to applicants from states "with which reciprocal relations have not been established; provided the credentials of such applicants are satisfactory and the examinations and passing grades required by such other boards are fully equal to those required by the Virginia Board." Code § 54-310 (1985 cumulative supplement). In 1988, Code § 54-310 was repealed and re-enacted in its current version, Code § 54.1-2927. It would appear that the Board's decision whether to license applicants who have obtained endorsements from boards or other ap-

---

[11] Prior to the enactment of Code § 54.1-2927(A) in 1988 its predecessor read as follows:

The Board, in its discretion, may arrange for reciprocity with the authorities of the District of Columbia and other states and territories having requirements equal to those established by this chapter and the rules and regulations of the Board, and issue certificates to applicants who have met such requirements. The Board, in its discretion, may require physical therapist or physical therapist assistant candidates for licensure to meet professional activity requirements or serve as traineeship as set forth in its rules and regulations. The Board, in its discretion, may issue certificates to applicants upon endorsement by boards or other appropriate authorities of other states or territories or the District of Columbia with which reciprocal relations have not been established; provided the credentials of such applicants are satisfactory and the examinations and passing grades required by such other boards are fully equal to those required by the Virginia Board.

The Board may issue certificates to applicants holding certificates from the national boards of their respective branches of the healing arts; provided their credentials, schools of graduation and national board examinations and results are acceptable to the Board. The Board shall promulgate rules and regulations in order to carry out the provisions of this section.

Code § 54-310 (1985 Cum. Supp.).

propriate authorities of other states or the District of Columbia with which reciprocal relations have been established would be made consistent with the understanding, if any, governing the reciprocal relations. Such a conclusion is implicit from the language of Code § 54.1-2927(A), which gives the Board discretion to license applicants for endorsement who are licensed in states "with which reciprocal relations have not been established."

The record before us does not establish whether Virginia has reciprocal arrangements with either Pennsylvania or the District of Columbia, places where Dr. Last is currently licensed. The record also does not establish whether the credentials committee would have reached the same conclusion if it had not acted upon the mistaken premise that Code § 54.1-2930 governed its review. Furthermore, because the Board based its denial of Dr. Last's application in part upon the application of Code § 54.1-2930(4), the record is unclear whether the Board views Regulation § 4.1 to be promulgated to effect the purposes of Code § 54.1-2927(A) or Code § 54.1-2930(4). In any event, the regulation itself does not distinguish between (i) applicants who have endorsements by other states with which reciprocal arrangements have been established, and (ii) applicants who have endorsements by other states with which reciprocal arrangements have not been established. If Dr. Last's application falls within the former category, the record does not show whether a reciprocal understanding governs the review of his application. If his application falls within the latter classification of applicants, Dr. Last is entitled to have his application judged in accordance with the discretion explicitly vested in the Board by Code § 54.1-2927(A).

Accordingly, I would reverse the decision and remand for a new hearing upon application of principles consistent with this opinion.