COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Willis and Bumgardner
Argued at Salem, Virginia


RONNIE LEE MOTSINGER
                                    MEMORANDUM OPINION[*] BY
v.     Record No. 1406-98-3    CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         APRIL 13, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                   William N. Alexander, II, Judge

            Albert L. Shaw for appellant.

            Richard B. Campbell, Assistant Attorney
            General (Mark L. Earley, Attorney General,
            on brief), for appellee.


     Ronnie Motsinger (appellant) was convicted in a jury trial

of two counts of grand larceny by check, in violation of Code

§ 18.2-181.  On appeal, he contends that the trial court erred

by instructing the jury on the rebuttable presumption of intent

to defraud provided by Code § 18.2-183.  He argues that while

Code § 18.2-183 does not require the Commonwealth to prove the

date when the payee sent notice to the defendant, this Court

should imply such an obligation as a matter of law.  Finding no

error, we affirm his convictions.

_____

     [*] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

I.

Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, the prevailing party below, granting to it all reasonable inferences fairly deducible therefrom. See Juares v. Commonwealth, 26 Va. App. 154, 156, 493 S.E.2d 677, 678 (1997). So viewed, the evidence established that appellant purchased jewelry from Peter Paul Yun (Yun), the manager of Oknam Jewelry (Oknam), a wholesale jewelry business in Atlanta, Georgia. Appellant, trading as "Jewel City" in Danville, Virginia, had done business with Yun for "one to two years" prior to the time of the instant charges.

In the fall of 1996, appellant ordered two shipments of jewelry from Oknam, which were sent by UPS. Yun later received two checks from appellant for the orders. Check 173 was written on September 14, 1996, in the amount of $868.56; check 175 was written on September 18, 1996, in the amount of $974.54. The business name on the checks was "Jewel City" and appellant signed the checks.

Yun deposited the checks twice, but they were returned each time unpaid and marked, "NOT SUFFICIENT FUNDS." Thereafter, he attempted to contact appellant to demand repayment. Yun testified as follows:

> Q. What did you do after that to attempt
> to collect on these two checks?

- 2 -

          A.    I immediately sent Certified letters
          for each check.

          Q.    And to what address did you send those
          Certified letters to?

          A.    Jewel City, the address on the check.

Yun further testified that there were two additional checks
written to Oknam that were also returned for insufficient funds.

     Yun stated that he sent notices for every check from Jewel
City that had bounced and the notices were returned "Refused."
One notice, sent on December 24, 1996, was admitted into
evidence.  The return receipt card for that notice indicated
that delivery was attempted on three different dates and was
stamped, "UNCLAIMED."

     On cross-examination, Yun admitted that he was not sure
whether the December 24, 1996 notice corresponded with either
check 173 or check 175.

          Q.    The question is, can you say that this
          notice [dated December 24, 1996], as opposed
          to some other notice . . . [and] it's an
          important distinction for this case, that
          this notice contained information about
          these checks?

          A.    Those checks in your hand?

          Q.    Couldn't it have been the other two
          checks?

          A.    May have been.

          Q.    Okay, so you're not sure of this
          notice?

          A.    I'm not sure, no sir.

- 3 -

However, Yun reiterated that four checks from Jewel City were returned for insufficient funds and that he sent out a certified letter on each check.

> Q. Do you remember sending this notice for these checks, absolutely, unequivocally, or could there have been some . . . ?
>
> A.   Without, without a doubt in my mind, any checks that have bounced from Jewel City, a Certified letter went along with that.
>
>  *       *       *       *       *       *       *
>
> Q.   Any checks that came from Jewel City that bounced, of those checks, did you ever not send a Certified notice?
>
> A.   No, I did send a Certified notice for any bounced check coming from Jewel City. That is standard procedure.

At the conclusion of the evidence, appellant objected to Instruction No. 3, which provided as follows:

> If the holder of a check sends notice by certified or registered mail to the maker or drawer of a check at the maker's address written or printed on the face of the check, whether that address is his home, office, or otherwise, that the check has not been paid to the holder, and if the maker or drawer fails to pay the amount due on the check together with interest within five days of the notice, you may infer that the maker or drawer had the intent to defraud or had knowledge or insufficient funds in, or credit with, the bank.  You are further instructed that such notice shall be deemed sufficient and equivalent to notice having been actually received by the maker or drawer, whether such notice shall be returned undelivered or not.

The jury found appellant guilty of two counts of grand larceny by check.  Appellant filed a post-trial Motion to Set Aside the Jury's Verdict, which was denied by the trial court.

## II.

Code § 18.2-181, the statute under which appellant was convicted, provides that it is unlawful for any person, with the intent to defraud, to make, draw or utter a check, knowing at the time of such making, drawing or uttering, there are insufficient funds in his or her account.[1]  Under Code § 18.2-183,

> . . . the making or drawing or uttering or delivery of a check, draft, or order, payment of which is refused by the drawee because of lack of funds or credit <u>shall be prima facie evidence of intent to defraud or of knowledge of insufficient funds</u> in, or credit with, such bank . . . unless such maker . . . shall have paid the holder thereof the amount due thereon, . . . <u>within five days after receiving written notice that such check . . . has not been paid to the holder thereof.</u>  Notice mailed by

---

[1] Code § 18.2-181 provides in part:

> Any person who, with intent to defraud, shall make or draw or utter or deliver any check, . . . knowing, at the time of such making, drawing, uttering or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, . . . for the payment of such check, . . . although no express representation is made in reference thereto, shall be guilty of larceny; and, if this check . . . has a represented value of $200 or more, such person shall be guilty of a Class 6 felony.

- 5 -

certified or registered mail, evidenced by
return receipt, to the last known address of
the maker or drawer shall be deemed
sufficient and equivalent to notice having
been received by the maker or drawer.

If such check . . . shows on its face a
printed or written address, home, office, or
otherwise, of the maker or drawer, then the
foregoing notice, when sent by certified or
registered mail to such address, with or
without return receipt requested, <u>shall be
deemed sufficient and equivalent to notice
having been received by the maker or drawer,
whether such notice shall be returned
undelivered or not.</u>

(Emphasis added).

In the instant case, appellant concedes that Code
§ 18.2-183 does not require the Commonwealth to prove the date
the notice was sent or that the notice was actually received by
appellant.  Additionally, he agrees that oral testimony or
circumstantial evidence may be used to show that the payee sent
the notice.  Nevertheless, appellant asks this Court to imply
the obligation to establish the date the notice was sent even
though such proof is not required specifically by the statute.

"Where a statute is unambiguous, the plain meaning is to be
accepted without resort to the rules of statutory
interpretation."  <u>Sykes v. Commonwealth</u>, 27 Va. App. 77, 80, 497
S.E.2d 511, 512 (1998) (quoting <u>Last v. Virginia State Bd. of
Med.</u>, 14 Va. App. 906, 910, 421 S.E.2d 201, 205 (1992)).
"Courts are not permitted to rewrite statutes.  This is a
legislative function.  The manifest intention of the

- 6 -

legislature, clearly disclosed by its language, must be applied." Id. at 80-81, 497 S.E.2d at 512-13 (quoting Barr v. Town & Country Properties, Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Anderson v. Commonwealth, 182 Va. 560, 566, 29 S.E.2d 838, 841 (1944))).

Applying these rules to the instant case, we hold that Code § 18.2-183 does not require the Commonwealth to establish either actual receipt of the notice or the date the payee sent the notice. Rather, the statute only requires proof the notice was sent by certified mail and the accused failed to repay the amount due within five days. See Code § 18.2-183. Here, the Commonwealth introduced the check numbers 173 and 175, which were returned for insufficient funds. Yun testified he sent certified letters to appellant requesting payment on each of the checks in question. Significantly, the evidence established that appellant never paid the amount due on the outstanding checks and certainly he did not make payment within five days of a written request to do so.

"[An appellate] court's responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Lewis v. Commonwealth, 28 Va. App. 164, 171, 502 S.E.2d 222, 225 (1998) (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)). Instruction No. 3 clearly stated the principle of law codified in Code § 18.2-183.

Furthermore, the evidence fairly raised the presumption of intent to defraud and having introduced evidence that certified notice was sent to appellant, the Commonwealth was entitled to rely upon that presumption.  Finding no error, we affirm appellant's convictions.

Affirmed.