# Joseph Patrick Payne, Sr.

## v.

# Commonwealth of Virginia

Record No. 860788

June 12, 1987

Present: Carrico, C.J., Cochran,* Poff, Compton, Stephenson, Russell and Thomas, JJ.

---

* Justice Cochran participated in the hearing of this case prior to the effective date of his retirement on April 20, 1987 and in the decision of the case subsequent to that date.

*Michael Morchower (Morchower, Luxton & Whaley*, on brief), for appellant.

*Ned M. Mikula (Rudy, Gill, Keown, Evans & Mikula*, on brief), for appellant, on ineffective assistance of counsel claim.

*Thomas D. Bagwell, Senior Assistant Attorney General (Mary Sue Terry, Attorney General*, on briefs), for appellee.

COMPTON, J., delivered the opinion of the Court.

On April 9, 1985, Joseph Patrick Payne, Sr., a prisoner at the Powhatan Correctional Center, was indicted for the capital murder of David Wayne Dunford, a fellow inmate in the correctional facility. Code § 18.2-31(c). In a bifurcated trial by jury held in April 1986, defendant was found guilty of the offense and his punishment was fixed at death upon the vileness predicate of the capi-

tal murder sentencing statute, Code § 19.2-264.4. Subsequently, the trial court considered a probation officer's report and, in a June 1986 hearing, additional evidence relevant to punishment. The court then sentenced defendant to death for the capital murder.

That sentence is before us for automatic review under Code § 17-110.1(A). *See* Rule 5:22. We have consolidated this review with defendant's appeal of the capital murder conviction. § 17-110.1(F). According to statutory mandate, we will consider not only the trial errors enumerated by defendant but also whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. § 17-110.1(C).

The facts were disputed, the defendant pleading not guilty to the charge. Nevertheless, upon review we will consider the evidence in the light most favorable to the Commonwealth, which prevailed below, according to settled appellate principles.

On March 3, 1985, about 6:40 a.m., the victim was in his cell, a room measuring approximately eight by twelve feet. As defendant, age 29, walked past the victim's cell door, defendant locked the door closed with a padlock, tossed a highly flammable liquid from a can through the bars into the cell, ignited the liquid with matches, and quickly moved down the cell corridor to a nearby shower room. According to an eyewitness, the "cell exploded" and the victim was "in there screaming and hollering, and flames of smoke and everything [were] just coming out." The victim sustained "70 percent total body burns [of] which 30 percent were third degree." He died from the burns nine days after the incident.

On appeal, defendant presents 21 questions, with subparts, raising alleged trial errors. Questions numbered by the defendant 1, 2, 3, 4, 9, and 10 are barred from consideration on appeal because he did not properly raise those issues at trial, in violation of our contemporaneous objection rule. This procedural rule provides, in part, that "[e]rror will not be sustained to any ruling of the trial court . . . unless the objection was stated with reasonable certainty at the time of the ruling." Rule 5:25. Thus, we will address the foregoing questions no further. Parts of other questions are barred from consideration for the same reason and we will note those instances *infra*.

■ The first question properly raised on appeal is whether the trial court erred by admitting inflammatory and prejudicial evidence in the guilt phase. Defendant objected to admission of three color photographs of the victim taken after death. These pictures showed front and rear views of the victim's unclothed body and depicted the severe burns he received. Defendant contends that this crime "speaks for itself" and that illustrations of the result of the attack on the victim were "unnecessary and unduly prejudicial." We disagree.

Admission of photographs rests within the sound discretion of the trial court. "Photographs of a victim are relevant if they tend to show motive, intent, method, premeditation, malice, or the degree of atrociousness of the crime." *Gray* v. *Commonwealth*, 233 Va. 313, 342-43, 356 S.E.2d 157, 173 (1987). These photos tend to show all the above factors, and their admission was not an abuse of discretion.

■ Next, defendant contends that testimony by the medical examiner about pain suffered by the victim as the result of the burns was irrelevant and "was prejudicial to the jury." We disagree. The severity of the burning which caused the death of the victim was relevant to the questions of malice and premeditation, and testimony on the subject was properly admitted.

■ Next, defendant argues the trial court erred by admitting testimony from a fellow inmate that defendant wished to be a member of the "Pagans" motorcycle group, which apparently had an active local chapter within the correctional facility. Robert Francis Smith, Jr., another inmate and principal witness for the prosecution, testified that defendant told him before the crime that defendant needed to "prove" himself as "mean" and "rough" in order to be accepted as a "Pagan." Defendant told Smith that defendant would "automatically become a Pagan" when he became a "killer."

This argument has no merit. Even though the prosecution is not required to prove motive, evidence of motive is relevant to establish a defendant's intent. *Robinson* v. *Commonwealth*, 228 Va. 554, 557, 322 S.E.2d 841, 843 (1984). According to the evidence, the main reason that defendant killed the victim was because the victim may have "snitched" on defendant, who had planned to escape from the facility, and because the victim had reneged on a drug deal in which defendant had paid the victim $500 cash to procure drugs for him. An additional motive, according to the evi-

dence, was defendant's desire to be feared as a killer in order to join the local chapter of the "Pagans." Manifestly, this evidence was relevant and properly admitted.

■ Next, defendant argues that the trial court erred by requiring two defense witnesses to testify in handcuffs and leg-irons. He contends that the court should have allowed each witness to testify "unencumbered," so the jury could determine his credibility "without reference to whether the witness was trusted by the penal system." We do not agree.

The decision whether to require the accused or witnesses to wear physical restraints in the courtroom and while testifying is a matter within the sound discretion of the trial court after giving due consideration to the rights of the accused, those present in the courtroom, and society at large. *See Gray* v. *Commonwealth*, 233 Va. at 343-44, 356 S.E.2d at 174; *Frye* v. *Commonwealth*, 231 Va. 370, 381-82, 345 S.E.2d 267, 276 (1986). The trial judge ruled that "security" concerns required that defendant's inmate witnesses testify in restraints. We find no abuse of discretion in this decision. The trial judge has overall supervision of courtroom security. Moreover, from a credibility standpoint, all inmate witnesses at this trial could be judged equally because the jurors were aware that such witnesses were, in fact, convicted felons and that the crime took place inside a penal institution. In addition, inmate witnesses for the prosecution already had testified in physical restraints.

■ Next, defendant contends the prosecutor engaged in improper argument and assigns numerous reasons. First, he says the prosecutor's statement that he was "surprised" at "the fact that only two inmates testified for the defendant" amounted to an improper comment on the number of witnesses who testified for the defendant. The trial judge sustained defendant's objection to this argument, and no motion for a mistrial or for a curative instruction to disregard was made. Thus, there is no relief to which defendant is entitled on appeal.

■ Second, defendant contends the foregoing comment amounted to a comment on his failure to testify. This objection was not made at trial. Thus, we will not consider it for the first time on review. Rule 5:25.

■ Third, defendant contends the prosecutor improperly expressed his personal opinion on four occasions during closing argument. There was no objection to the first instance and we will ad-

dress it no further. Rule 5:25. The next instance was the "surprised" argument just discussed. In the next instance, the trial court sustained defendant's objection to the prosecutor's use of the words, "I believe," and, upon defendant's motion for a mistrial, instructed the jury that " 'I believe' has no place in the attorney's argument." This prompt action by the court cured any possible error that may have occurred. In the next instance, defendant contends the following statement, and a similar remark, by the prosecutor made during argument in the penalty phase was improper: "If he is not a candidate for being a possible threat in the future, I don't know what would be." These comments were not improper expressions of personal opinion by counsel. Rather, they merely were statements, based on the evidence, that the defendant would constitute a future danger to society in view of his prior history. Moreover, the comments could not have prejudiced the defendant because the jury did not fix his punishment based on the dangerousness predicate of the capital murder sentencing statute.

Fourth, defendant argues the prosecutor's statement in the guilt-phase argument that the jury had a "duty" to find defendant guilty was "improper and an incorrect statement of the law." No objection was made at trial to this argument and consideration of the alleged error is barred by Rule 5:25.

Fifth, defendant contends that the prosecutor engaged in improper argument during rebuttal in the penalty phase. The portion of the argument quoted and attacked in defendant's brief is not the part to which objection was made in the trial court. Thus, we will discuss only the part to which timely objection was made by defendant. That part is,

"The Virginia Legislature, our elected officials have formulated the laws on capital murder, and one of the criteria that meets the capital murder and the death penalty that goes with it is for the prisoner in our penal institutions to kill a fellow human being while a prisoner in that institution. I will not insult your intelligence to expound on the reasons which are so obvious, although, we have multiple problems in our penal system. There cannot be a toleration of inmates killing other people, fellow inmates, or correctional officers. This man needs to be punished for what he did. If there was ever a case of capital murder, of capital murder that deserves the death penalty, this one is it. Not only, ladies and gentle-

men, does he need to be punished for what he has done, he needs to be punished as a deterrent to the other inmates in the penal system of this State. Over at the Powhatan Correctional Center, there probably is another 1000 inmates."

Defendant argues that the comments "urged the jury to impose the death penalty on the defendant as a deterrent to the other 1000 inmates" at the penal facility. He says that the argument "is a direct contradiction of the obligation of the jury to impose punishment to fit the offense for which defendant is being tried." We disagree.

■ We have noted that "it is proper for a prosecutor to ask a jury to fix a punishment in a particular case that will deter others from committing like offenses." *Hutchins* v. *Commonwealth*, 220 Va. 17, 20, 255 S.E.2d 459, 461 (1979). We indicated in *Hutchins* that, while considerations of deterrence should not be the basis for a finding of guilt of the offense, such considerations may be argued in connection with the punishment to be assessed for the crime. Here, the challenged argument was in the sentencing phase of this bifurcated trial. Thus, it was proper for the prosecutor to ask for the death penalty as a deterrent to other inmates who might be disposed to commit a similar crime.

■ Next, defendant argues that the evidence was not sufficient to support the conviction. He contends that the Commonwealth relied solely on "inherently incredible" testimony of inmate witnesses and, because "that testimony did not exclude every reasonable hypothesis of innocence, the conviction should be reversed." We do not agree.

If the jury believed the Commonwealth's witnesses, the evidence was overwhelming to sustain defendant's conviction. Smith, the main witness for the prosecution, explained the details of the plan, in which he participated, to kill the victim. Other inmates testified about the plan. Smith related the specifics of defendant's motive for the murder. He was an eyewitness to defendant's acts of throwing the liquid into the victim's cell and igniting the fluid with matches. Prison employees corroborated Smith's account of the incident. The jurors were instructed fully on the manner in which they were to judge the testimony, and credibility, of convicted felons. Specifically, the jurors were advised that accomplice testimony should be considered "with great care" and they were

cautioned against convicting defendant "upon the uncorroborated testimony of an accomplice."

In sum, we have found no inherently incredible testimony by the Commonwealth's witnesses, and defendant has referred us to no such testimony. As both attorneys advised the jury in opening statements, credibility of witnesses was the "key to this case" and the "key ingredient" in the trial. The jury resolved the credibility issue in favor of the Commonwealth and there was abundant evidence to support that conclusion.

█ Next, defendant argues that "testimony regarding future dangerousness was inadmissible inasmuch as it invaded the province of the jury." Dr. Arthur Centor, a licensed clinical psychologist at the Forensic Unit of Central State Hospital in Petersburg, who had examined defendant about four months after the offense, testified that defendant "shows a probability for committing criminal acts of violence, which would constitute a continuing serious threat to society." This opinion was based, according to the witness, upon defendant's "past history going back to the age of 10, going through previous convictions, other related difficulties with the law, and the circumstances of the present alleged crime." Defendant contends that any testimony by an expert on the question of future dangerousness is testimony upon the ultimate fact in issue and therefore is inadmissible. We disagree.

In the first place, the issue is moot because the jury did not find the defendant to be a future danger to society. Rather, as we already have indicated, the death penalty was fixed based on the vileness of the crime. Because, however, the defendant says he was somehow prejudiced by admission of this testimony, we will address the merits of the issue.

█ Under the statutory scheme for capital murder cases, the future dangerousness of the defendant is not the "precise and ultimate fact in issue." *Webb* v. *Commonwealth*, 204 Va. 24, 33, 129 S.E.2d 22, 29 (1963). Under our sentencing procedure, if the defendant is found guilty of an offense which may be punishable by death, there must be a determination whether defendant shall be sentenced to life imprisonment or death. Code § 19.2-264.4(A). The penalty of death shall not be imposed unless the Commonwealth shall prove beyond a reasonable doubt either the probability of future dangerousness or the fact of vileness. Code § 19.2-264.4(C). Even if the jury decides that either predicate for the death penalty has been proven, it still has the discretion to

sentence the defendant to life imprisonment, not death. Therefore, the choice between death and life imprisonment is the ultimate issue for the jury. And the expert witness did not express an opinion upon what sentence defendant should receive. *See Cartera* v. *Commonwealth*, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978).

Next, defendant argues the trial court erred in admitting in the sentencing phase evidence of defendant's confession to and sentence in a previous capital murder. We reject this argument.

■ Evidence of prior crimes committed by the accused is relevant in the penalty phase of a capital murder trial on the issue of defendant's propensity to commit violent acts in the future. *Gray* v. *Commonwealth*, 233 Va. at 346, 356 S.E.2d at 175. In *Poyner* v. *Commonwealth*, 229 Va. 401, 418, 329 S.E.2d 815, 827, *cert. denied*, 474 U.S. 888, 474 U.S. 865 (1985), we approved the viewing during the penalty phase of a video-taped confession to five prior murders committed by Poyner. In *Bassett* v. *Commonwealth*, 222 Va. 844, 858, 284 S.E.2d 844, 853 (1981), *cert. denied*, 456 U.S. 938 (1982), we approved introduction during the penalty phase of a prior sentence received by the defendant. *See Watkins* v. *Commonwealth*, 229 Va. 469, 487, 331 S.E.2d 422, 435 (1985), *cert. denied*, 475 U.S. 1099 (1986).

■ Next, defendant contends the trial court admitted Dr. Centor's testimony in violation of defendant's Fifth and Sixth Amendment rights. Dr. Centor examined defendant in July 1985 and testified at trial, as previously indicated, upon the issue of defendant's future dangerousness. Defendant argues that the expert testified based on statements made by defendant without a voluntary waiver of defendant's right against self-incrimination. He maintains that the absence of an attorney during the psychiatric examination violated defendant's Sixth Amendment rights. These contentions are meritless.

As previously noted, any trial error relating to the issue of future dangerousness has been mooted because the jury did not find that defendant would be a continuing serious threat to society. In addition, Centor examined the defendant upon defendant's request for a competency evaluation. Thus, the issues of Fifth Amendment privilege and Sixth Amendment right to counsel dealt with in *Estelle* v. *Smith*, 451 U.S. 454 (1981), relied on by defendant, are not involved here. In *Estelle*, defendant was compelled by the State to submit to a competency examination and the examining

physician testified for the prosecution about defendant's future dangerousness. The Supreme Court held that the testimony violated defendant's Fifth Amendment privilege against compelled self-incrimination and his Sixth Amendment right to the assistance of counsel. Those facts do not exist in the present case. *See Granviel* v. *Estelle*, 655 F.2d 673, 683 n.17 (5th Cir. 1981), *cert. denied*, 455 U.S. 1003 (1982).

 Next, defendant argues that the death sentence "was imposed under the influence of passion, prejudice and other arbitrary factors." In support of this contention, defendant repeats previously alleged errors and says the sentence was "a result of inflammatory and prejudicial evidence, numerous improper statements made by the Commonwealth's Attorney and inadmissible testimony of Dr. Centor." We already have decided those issues against the defendant and no further comment is warranted on the instant contention.

Next, defendant argues the sentence "is excessive and disproportionate to the penalty imposed in similar cases." Among other things, defendant says there was no "mutilation or disfigurement on the victim so as to evince depravity of mind. The victim in the instant case in fact walked out of his jail cell." We reject this argument.

 Upon the question of excessiveness and disproportionality, we have examined the records of all capital murder cases reviewed by this Court in order to determine whether triers of fact in this jurisdiction generally assess the death penalty for conduct similar to that of this defendant. *Clozza* v. *Commonwealth*, 228 Va. 124, 138, 321 S.E.2d 273, 282 (1984), *cert. denied*, 469 U.S. 1230 (1985). We have not reviewed previously a case involving incineration of an inmate by a fellow inmate in a penal institution. Nevertheless, we are satisfied that the present sentence is not excessive or disproportionate to the penalty imposed in similar cases, considering this crime and this defendant. The defendant, implementing a carefully conceived plan, locked his victim in a small area, doused the area with a fluid that was more volatile than gasoline, and set the victim afire. The victim's body not only was burned extensively on the exterior, but the tissue lining his trachea also was burned and his "lungs showed the effect of high heat burn." *See Jones* v. *Commonwealth*, 228 Va. 427, 323 S.E.2d 554 (1984), *cert. denied*, 472 U.S. 1012 (1985). This conduct reveals

depravity of mind and fully warrants imposition of the death penalty.

Next, defendant contends that the trial court erred in refusing to consider after-discovered evidence. This contention has no merit.

■ The issue arose in the following manner. The jury trial ended on April 30. The sentencing hearing mandated by Code § 19.2-264.5 was scheduled for June 19. On that day, defendant moved for a continuance because he sought to discharge trial counsel. The motion was denied. Defense counsel then made a motion for continuance upon the ground that he needed additional time "to prepare for the sentencing stage." That motion was denied. Defense counsel then moved for a new trial upon the ground of after-discovered evidence. No such motion had been filed in writing, nor had any affidavits been presented. That motion also was denied.

The defendant's proffer of the alleged after-discovered evidence indicated that inmate witnesses would testify that the Commonwealth's eyewitness, Smith, told them prior to trial that his "testimony was going to be a fabrication" so he could get his prison time reduced in consideration for his testimony. These alleged witnesses had not been subpoenaed for the June 19 hearing.

■ Motions for a new trial based on after-discovered evidence are addressed to the sound discretion of the trial judge. They are disfavored, are considered with special care and caution, and are to be awarded with great reluctance. *Odum v. Commonwealth,* 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983). The moving party must establish that the evidence appears to have been discovered subsequent to the trial, that it could not have been secured by the applicant for use at the trial in the exercise of reasonable diligence, that it is not merely cumulative, corroborative or collateral, and that it is material, and such as would produce opposite results at another trial. *Id.*

Defendant has failed to meet at least two of the foregoing requirements. The evidence appears to be cumulative because two inmate witnesses testified for defendant that Smith, in effect, was lying. And, even if the proffered evidence were believed, the trial court was justified in concluding that it would not produce a different result at another trial, in view of the overwhelming evidence of defendant's guilt. Moreover, the trial court properly could have viewed the motion as just another effort to obtain a postponement

of sentencing. We find no abuse of discretion in denial of the motion.

 Next, we reject defendant's argument that during the June hearing the trial court erred in refusing to allow defendant's attorney to withdraw as counsel and in refusing to grant a continuance after ruling on the motion to withdraw. This contention is based on defendant's statement to the trial court that he had proof the prosecution's witnesses were lying and his counsel would not allow him to testify during the guilt phase or to call 12 witnesses in his behalf. The continuance was necessary, according to defendant, so counsel could "restore the relationship" between attorney and client.

Motions for counsel to be permitted to withdraw and for a continuance are addressed to the sound discretion of the trial court. The basis for this motion to withdraw was merely a demonstration by defendant individually of dissatisfaction with the result of the trial, even though trial counsel conducted a vigorous defense. Indeed, at the outset of the trial, the defendant advised the trial judge that he was satisfied with the services of his attorney. And a further continuance of the June hearing was unnecessary because the defense had had ample time, two months, to prepare for the hearing. We conclude that the court did not abuse its discretion in denying either motion.

Next, defendant asserts that the statutes which limit review of a death penalty case to this Court violate his due process and equal protection rights. He argues that the present system, which excludes cases of this type from the Court of Appeals' appellate jurisdiction, provides those who have been sentenced to death with "fewer opportunities for review" than defendants in cases where "death is not an issue." This argument is without merit.

 The right to appellate review is a statutory right and is not a necessary element of due process. *Saunders* v. *Reynolds*, 214 Va. 697, 699, 204 S.E.2d 421, 423 (1974). Thus, no due process violation occurs if an appeal is barred.

 Upon the question of equal protection, an alleged equal protection denial must result from the fact that a statutory right granted others has been withheld from the class of which the defendant is a member. And in determining whether the withholding is permissible, we must ascertain whether a rational basis exists for the statutory classification in which defendant has been placed.

*Ballard* v. *Commonwealth*, 228 Va. 213, 217, 321 S.E.2d 284, 286 (1984), *cert. denied*, 470 U.S. 1085 (1985).

According to the applicable statutes, the Court of Appeals has primary appellate jurisdiction for review of criminal cases when the death penalty has not been imposed. Code § 17-116.05:1. This procedure in the Court of Appeals involves a discretionary process by petition for appeal. Code § 17.116.05:2. Normal appellate procedure in this Court likewise is by petition for appeal. Code § 8.01-670.

 In death penalty cases, however, a defendant is afforded a direct, full review as a matter of right. Code § 17-110.1. This Court is required to consider trial errors enumerated by the defendant and, in addition, to determine whether the death penalty has been imposed under the influence of passion, prejudice, or any other arbitrary factor, and whether the sentence is excessive or disproportionate to the penalty imposed in similar cases. Code § 17-110.1(C). Also, the Court is given the power to affirm the sentence, commute it to life imprisonment, or to remand for a new sentencing proceeding. Code § 17-110.1(D). This statutory complex guarantees a death-penalty defendant an automatic full review; defendants not sentenced to death are not guaranteed such review, but instead are only entitled to a discretionary review, first in the Court of Appeals and, if unsuccessful, in this Court.

We hold there was a rational basis for the statutory classification in which this defendant has been placed. It was rational for the General Assembly, given the gravity of cases involving a sentence to death, to provide those defendants an automatic, plenary review in the Commonwealth's highest court. The classification not only is rational, it places the defendant sentenced to death in a preferred appellate position. Thus, no equal protection violation has occurred.

Finally, through separate counsel appointed on appeal, defendant asserts he was denied the effective assistance of counsel appointed at the trial stage. (Although we refer to counsel in the singular, two attorneys were appointed to represent defendant at trial with one handling the bulk of the defense.) Defendant alleges that counsel was ineffective in failing to allow him to testify during the guilt phase; in failing to cross-examine adequately; in failing to present evidence; in failing to challenge a juror who manifested difficulty "in applying defendant's right not to testify"; in failing to object to the competency of a prosecution witness or to

request a mental examination of the witness; in failing to state and preserve grounds for appeal; and in not preparing adequately for the sentencing proceeding.

 Code § 19.2-317.1 provides that claims of ineffective assistance of counsel may be raised on direct appeal "if all matters relating to such issue are fully contained within the record of the trial." In *Correll* v. *Commonwealth*, 232 Va. 454, 470, 352 S.E.2d 352, 362 (1987), applying the statute, we stated that generally "unless counsel charged with ineffectiveness has had an opportunity to defend himself on the record by giving the rationale for his challenged acts of omission or commission, we will not consider the issue on direct appeal." *See Beaver* v. *Commonwealth*, 232 Va. 521, 537, 352 S.E.2d 342, 351 (1987). This is such a case. Trial counsel has not been afforded the opportunity in the trial record to address defendant's complaints of his performance and none of the charges made by defendant are errors so egregious that we can adjudicate them without counsel's explanation. Therefore, we do not reach these claims.

Finding no error in the trial of this case or in the imposition of the sentence to death, we will affirm the judgment of conviction.

*Affirmed.*