COURT OF APPEALS OF VIRGINIA


Present:   Judges McClanahan, Petty and Powell
Argued at Richmond, Virginia


RYAN ONEAL DAVIS

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0142-08-2                  JUDGE CLEO E. POWELL
                                                JUNE 9, 2009
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF SUSSEX COUNTY
                               W. Allan Sharrett, Judge

            R. Clinton Clary, Jr. (Slayton, Bain & Clary, on brief), for
            appellant.

            Leah A. Darron, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Ryan Oneal Davis, appellant, was convicted of first-degree murder after having been twice

convicted of a violent felony, in violation of Code §§ 18.2-32 and 19.2-297.1.  On appeal,

appellant contends that the trial court erred in denying (1) defendant's motion to suppress

statements against interest made by defendant and photographs taken of the defendant's body by

police,[1] (2) defense counsel's motion to strike a potential juror for cause, and (3) defendant's

motion for new counsel and defense counsel's motion to withdraw.  Finding no error, we affirm

the trial court's judgments and affirm appellant's conviction.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] On brief, Davis argues that the photographs taken when he voluntarily lifted his shirt
should not have been admitted because the Fifth Amendment applies both to responses to
express questioning by police and to the "functional equivalent" thereof.  At oral argument,
counsel for appellant withdrew this issue from our consideration.  Thus, appellant has expressly
withdrawn this issue and we will not consider it on appeal.  Logan v. Commonwealth, 47 Va.
App. 168, 172 n.4, 622 S.E.2d 771, 773 n.4 (2005) (en banc).

I.  BACKGROUND

On June 13, 2006, Sergeant Giles of the Waverly Police Department responded to the scene of a murder.  At Captain Gwaltney's request, Sergeant Giles soon left the scene and drove to Davis's home.  There, he told Davis that Captain Gwaltney wanted to speak with him, and when Davis said he did not have transportation to the police station, Sergeant Giles offered to give him a ride.

Shortly after Davis arrived at the station, Captain Gwaltney entered the booking room and told Davis that he was not under arrest but was being held for an investigative detention.  Based on information he received during the murder investigation, Captain Gwaltney asked Davis to lift his shirt to allow the captain to photograph Davis for injuries and Davis complied.  Captain Gwaltney did not ask Davis any questions at this time.

After taking the photographs, Captain Gwaltney read Davis his Miranda rights from a preprinted form.  Davis indicated that he understood his rights and agreed to make a statement.  Captain Gwaltney spoke with Davis for over an hour and a half before Davis requested an attorney, and Captain Gwaltney immediately terminated the interview.  The captain brought Davis back to the booking room and left him with Sergeant Giles and Captain Williams after telling them that Davis had requested an attorney.

As he left the room Captain Gwaltney heard Davis tell Sergeant Giles and Captain Williams, who Davis knew from "growing up" together in the same town, that he wanted to talk about the case.  The officers repeatedly told Davis that they could not talk to him because he had invoked his right to an attorney.  Captain Williams told Davis that it was not in his best interest to talk.  Davis insisted that he wanted to "clear up the matter."  Captain Williams again advised Davis of his Miranda rights, and they spoke for approximately twenty to thirty minutes before Captain Gwaltney returned.  During that time, Sergeant Giles went to find Captain Gwaltney.

When Captain Gwaltney returned, Davis and the police went to Captain Gwaltney's office. Captain Williams again advised Davis of his <u>Miranda</u> rights, and Davis spoke with police. At the end of the interview, Davis signed the notes that Captain Gwaltney had taken.

Several days later, while Davis was incarcerated in the local jail, he asked to meet with Sergeant Diggs. When they met, Sergeant Diggs again advised Davis of his <u>Miranda</u> rights and Davis signed a waiver of these rights. Davis then asked Sergeant Diggs about funeral arrangements for the deceased and made another statement about the murder.

At Davis's motion to suppress the photographs and his statements, the trial court held that Davis was in custody when he was taken to the police station, but that the police were not interrogating him when they asked him to raise his shirt and allow them to photograph him. The court further held that the officer's request to photograph Davis was not the functional equivalent of interrogation and, therefore, there was no need to read Davis his <u>Miranda</u> rights before such request was made. The trial court further found that Captain Gwaltney read Davis his <u>Miranda</u> rights before interrogating him and that Davis reinitiated conversation at the police station after requesting an attorney. The court also found that Davis initiated conversation with Sergeant Diggs. Therefore, the trial court denied Davis's motion to suppress.

After the trial court denied his motion to suppress, Davis asked the court to remove his attorney because he filed a complaint against the attorney with the Virginia State Bar. The trial court told Davis that it did not want to hear about his complaint to the bar. Davis also asserted that his attorney only visited him four times, including once on the morning of the suppression hearing, and did not contact potential witnesses prior to the suppression hearing. Davis also complained that his attorney had not responded to Davis's suggestions regarding his case. The trial court held that there was no merit to Davis's claim that his counsel had been ineffective and denied his request that his attorney be removed.

At arraignment, Davis moved for new counsel and again complained that he and his attorney had an irreconcilable conflict, that they could not communicate, and that he did not trust his attorney. The trial court found that there was no factual basis for Davis's claims and denied his request for a new attorney.

During the *voir dire* of potential jurors at Davis's trial, Christopher Shannon stated that he would be more likely to believe the testimony of a police officer than a lay witness if all other things were equal. He indicated that he would give an officer more weight simply because of his profession. When asked if the case came down to the credibility of an officer or an officer's testimony, Shannon stated that he believed he could be fair. The trial court denied Davis's motion to strike Juror Shannon for cause.

The trial court then began its process of empanelling a venire panel from the thirty-five potential jurors who participated in the *voir dire* process. The trial court struck one person for cause, leaving thirty-four potential panel members. To further reduce the number of potential jurors to reach the twenty-four necessary for the venire panel, the trial court randomly drew ten names of people to remove from the group. Christopher Shannon was among the ten people randomly removed from the venire panel and, as such, did not serve as a juror in Davis's trial.

## II. ANALYSIS

### A. DENIAL OF APPELLANT'S MOTION TO SUPPRESS

The Fifth Amendment guarantees that "no person . . . shall be compelled to be a witness against himself." U.S. Const. amend. V. Miranda v. Arizona, 384 U.S. 436, 479 (1966), explains that the Fifth Amendment requires police to warn an individual subject to custodial interrogation that he has the right to remain silent and the right to an attorney. This privilege "protects an accused only from being compelled to testify against himself, or otherwise provide

the State with evidence of a testimonial or communicative nature . . . ." Schmerber v. California, 384 U.S. 757, 761 (1966).

Davis asserts that the trial court erred in denying his statements made to officers at the police station and later at the jail because these statements were obtained after he invoked his Fifth Amendment rights. It is well settled that if the accused indicates to police at any time during an interrogation that he would like to have an attorney present, interrogation must cease until the accused has an attorney present. Miranda, 384 U.S. at 474. The accused may not be "subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communications, exchanges, or conversations with the police*." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981) (emphasis added).

Though Davis testified that he did not waive his rights or initiate further conversation with police, the trial court disbelieved his testimony and believed the police officers' testimony that they scrupulously honored Davis's request for an attorney. Indeed, the trial court accepted the officers' testimony that, at the police station, officers re-read the Miranda warnings to Davis after he repeatedly expressed his desire to speak with them and that he subsequently waived his rights again. From the record, it is clear that the officers did not violate Davis's rights because Davis initiated conversation with them both at the police station and local jail. Thus, we hold that the trial court properly denied Davis's motion to suppress his statements to police.

### B. DENIAL OF APPELLANT'S MOTION TO STRIKE A POTENTIAL JUROR FOR CAUSE

Appellant argues that he was entitled to a venire panel free from cause. To that end, he asserted on brief that the trial court erred in not striking Christopher Shannon for cause because during *voir dire* Shannon revealed that he had a bias in favor of police officers. Though the trial court refused to strike Shannon for cause having found him to be sufficiently rehabilitated, Shannon was nevertheless subsequently excluded as a prospective juror through the trial court's

random process to seat a venire panel.[2]  Appellant was not required to use a peremptory strike to remove Shannon from the final jury, and Shannon did not ultimately serve on Davis's jury.

A case becomes "moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969).  It is not the purpose of the Court "'to render advisory opinions, to decide moot questions or to answer inquires [that] are merely speculative.'" Commonwealth v. Harley, 256 Va. 216, 219-20, 504 S.E.2d 852, 854 (1998) (quoting City of Fairfax v. Shanklin, 205 Va. 227, 229-30, 135 S.E.2d 773, 775-76 (1964)).

Here, appellant contends that the trial court should have struck Shannon for cause because Shannon expressed bias in favor of the police.  Because Shannon was randomly excluded as a prospective juror by the judge prior to the parties' use of peremptory challenges, the question of whether the trial court erred in denying Davis's motion to strike Shannon for cause is moot.

### C.  DENIAL OF APPELLANT'S MOTION FOR NEW COUNSEL AND DEFENSE COUNSEL'S MOTION TO WITHDRAW

The decision whether to grant a motion to withdraw as counsel or for new counsel lies within the sound discretion of the trial court. Payne v. Commonwealth, 233 Va. 460, 473, 357 S.E.2d 500, 508 (1987); Kinard v. Commonwealth, 16 Va. App. 524, 526, 431 S.E.2d 84, 85-86 (1993).  Denial of such motions is reviewed for an abuse of discretion. Paris v. Commonwealth, 9 Va. App. 454, 459, 389 S.E.2d 718, 721 (1990).  An indigent defendant cannot have his original attorney replaced unless he shows good cause. Kinard, 16 Va. App. at 526, 431 S.E.2d at 86.

---

[2] Though appellant brought this issue to the Court's attention at oral argument, he did not withdraw his assertion that the trial court erred.  He simply acknowledged that the Commonwealth was likely correct in arguing that the issue was moot.

Here, Davis twice asked the court to remove his attorney from the case. He informed the trial court that he was not satisfied with his attorney's services, had an irreconcilable conflict with his attorney, and could not trust his attorney. Davis indicated that he complained to the Virginia State Bar about his attorney, but the trial court cautioned Davis that it did not wish to know more about his communications with the State Bar. When the trial court asked Davis if he had any facts upon which his allegations were based, Davis conceded that he did not. While in response to Davis's allegations, his counsel asked the court to allow him to withdraw, Davis's counsel told the court that he had spent over 100 hours preparing the case, had met with Davis "numerous times," and was fully prepared to go to trial. Davis's counsel stated that although he took offense to Davis's allegation, this would not affect his representation of Davis.

As Davis provided the trial court with nothing to support his request that the court remove his attorney and his attorney avowed that he was prepared for trial, nothing in the record indicates that the trial court abused its discretion in denying Davis's motion. Therefore, we affirm the trial court's denial of Davis's request for new counsel and defense counsel's motion to withdraw.

### III. CONCLUSION

For the foregoing reasons, this Court affirms the trial court's denial of Davis's motion to suppress, the denial of Davis's request to remove his attorney and his attorney's request to withdraw. This Court declines to consider appellant's argument that the trial court erred in refusing to dismiss Shannon for cause because this issue is moot.

Affirmed.