COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Malveaux
Argued by videoconference

RANDOR LEE UZZLE, JR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0386-19-1                      JUDGE RANDOLPH A. BEALES
                                                    DECEMBER 29, 2020

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                            David W. Lannetti, Judge

          Andrew Sebok for appellant.

          Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
          Attorney General, on brief), for appellee.


       Following a bench trial, appellant Randor Lee Uzzle, Jr. was convicted of rape under

Code § 18.2-61.  On appeal, he contends that the trial court erred in failing to grant his motion to

replace his court-appointed defense attorney.  He also argues that the "trial court erred in failing

to inquire into the apparent conflict of interest" when it learned at the sentencing hearing that

Uzzle's attorney had prosecuted him approximately twelve years earlier in what he

acknowledges was an unrelated criminal proceeding.

                                    I. BACKGROUND

       Uzzle was charged with raping T.M., his friend's fourteen-year-old daughter.[1]  Before his

trial began on September 18, 2018, Uzzle's court-appointed trial counsel, Asha Pandya, informed

the court that Uzzle wished to address the court directly.  After the trial judge granted him

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Uzzle was also charged with aggravated sexual battery under Code § 18.2-67.3 but that
charge was *nolle prosequied*.

permission to speak, Uzzle stated, "Yes, sir.  I just feel like [Pandya] is not trying to act for me at all."  Uzzle explained, "[L]ike she was supposed to come see me, and I am not prepped.  She is angry because I didn't take the deal.  She slammed the door in my face in the back.  She has an attitude, and I haven't talked to her."  The trial judge asked Uzzle when he had last spoken with Pandya, and Uzzle replied, "Like a week or two ago, and she was supposed to come and see me.  This is a very serious case, and I was just now seeing her today, and she was rushing to talk to me in the back."

After hearing Uzzle's concerns, the trial judge turned to Pandya.  He inquired about Uzzle's allegations and asked if she had agreed to meet with him a week ago.  Pandya stated:

> It was the end of the week before the hurricane.  It was approximately—less than ten days ago.  Mr. Uzzle was completely prepped for this trial.  We've talked about all the issues as far as this being a credibility case.  We have even gone through what the witness testimony would be.  We've spoken about the guidelines, both adjusted and unadjusted.
> There was an offer made by the Commonwealth Attorney's Office.  We talked about that on several occasions, and he initially rejected it.  This morning when we came for trial we were transferred so I advised Mr. Uzzle of some issues dealing with being in a new courtroom and so on, went over the guidelines again.  It was Mr. Uzzle who upon having a conversation with me wanted me to reapproach the Commonwealth with a determinative sentence, and he indicated that was something he was interested in doing, which I did.  I relayed it to them, came back.  I told him throughout I have no agenda, not telling him what he should do.  I never do with my clients.  Unfortunately, he doesn't like the facts, he doesn't like the guidelines and he doesn't really like my legal advice, as to what I said to him I think is in his best interest as it relates to his freedom. Other than that I don't know what else—

The trial judge interjected, asking, "Are you prepared for trial?" and Pandya responded, "I'm absolutely prepared.  I've been prepared for weeks."  When the trial judge asked if Uzzle had any additional comments, Uzzle stated:

> Yeah.  She said we prepped for witnesses, but when she came to see me ten or whatever days ago, she said I would be back,

to come see me so we can prep and so I know what to say and what not to say, and she never came, so I'm not prepped for trial.

In response, Pandya explained that she had intended to visit Uzzle again but was unable to do so because of a hurricane. She stated that, for "any major case like this," she tries to see her clients multiple times but the fact that she was unable to visit him that last time did not "mean he wasn't already prepped as far as that is concerned."

After listening to Uzzle and his counsel, the trial judge stated, "The Court is going to deny the motion to withdraw counsel. The Court is going to treat it as a motion to withdraw."

The trial court then proceeded with the arraignment. During the plea colloquy, the trial judge asked Uzzle if he was satisfied with the services of his attorney. Uzzle responded, "No." He continued, "I shouldn't have to argue with my lawyer and the prosecutor. That's it." Uzzle entered a plea of not guilty and, following a bench trial, was found guilty of rape.

On February 15, 2019, Uzzle appeared before the trial court for a sentencing hearing, where he chose to testify. At the beginning of his testimony, Uzzle stated, "First of all, I wanted to say that I feel like, you know, my case as in a whole wasn't really hand[l]ed professionally in my point of view." Following this statement, both Pandya and the trial judge explained the purpose of the sentencing hearing, and Pandya asked Uzzle to leave for appeal any issues not relevant to the sentencing. Pandya then proceeded with direct examination, and Uzzle testified about his experiences working multiple jobs after being released from custody in 2010 following a manslaughter conviction. Pandya and Uzzle then engaged in the following conversation:

> [Pandya]: And just so we're clear, you and I spoke about [how] I was actually the prosecutor on this case.
>
> [Uzzle]: You was the prosecutor on the case.

> [Pandya]: So I'm very familiar with the actual details of what that case was and what it was not.
>
> [Uzzle]: Of everything.

After Uzzle testified, the Commonwealth argued for a sentence "around the high end [of the sentencing guidelines] of 27 years" of incarceration, describing Uzzle's prior manslaughter conviction as "a crime entrenched in violence" and arguing that Uzzle's criminal record conveyed a pattern of violent behavior. Pandya argued for a sentence at the low end of the guidelines. As part of her argument for a lower sentence for Uzzle, she provided the trial court with additional information regarding the manslaughter conviction which she had gained from her role as the prosecutor in that case. She stated that, while there was an "official version" of the facts that led to Uzzle's conviction, there was also "a lot more to th[at] case." She explained that Uzzle had originally been charged with murder but, upon investigation, it was found that the shooting was clearly an "accidental shooting by Mr. Uzzle" of one of his friends. She stated that he "either accidentally pulled the trigger on the gun, or it went off accidentally." Pandya represented that Uzzle "was overcharged" when the Commonwealth initially charged him with murder, leading her to offer Uzzle a plea agreement for involuntary manslaughter because "it was the right disposition in that particular time."

Pandya also explained how Uzzle "took personal responsibility" for his actions. She stated, "And I can tell you from being the prosecutor, he felt a tremendous amount of remorse. This gentleman cried at the sentencing. He cried at the time he took the offer. This was one of his very best friends." Pandya reiterated that she was able to tell the trial court these details about Uzzle's manslaughter conviction "because [she] happen[ed] to be [the] prosecutor that handled them."

At the conclusion of the hearing, the trial court gave Uzzle a twenty-year active sentence.

## II. ANALYSIS

### A. The Motion to Withdraw

In his first assignment of error, Uzzle contends, "The trial court erred in denying the defendant's *Motion* to have his defense attorney replaced." (Emphasis in original.) Uzzle argues that by denying his motion, the trial court violated his Sixth Amendment right to counsel. He contends that "[a]t a minimum, the statements made by Ms. Pandya and Mr. Uzzle to the trial court clearly demonstrate that there was a significant breakdown of communication between Mr. Uzzle and Ms. Pandya to the point where the client did not trust his attorney." He also claims that, if the trial court had inquired further regarding Pandya's preparedness, it likely would have discovered the alleged conflict of interest for Pandya regarding representing Uzzle.

The trial court stated that it was treating Uzzle's complaints about Pandya's performance as a motion to withdraw. "Motions for counsel to be permitted to withdraw . . . are addressed to the sound discretion of the trial court." Spence v. Commonwealth, 60 Va. App. 355, 369 (2012) (quoting Payne v. Commonwealth, 233 Va. 460, 473 (1987)). "The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.'" Brown v. Commonwealth, 288 Va. 439, 442 (2014) (quoting U.S. Const. amend. VI). "It is well established that this constitutional guarantee entitles indigent criminal defendants to court appointed counsel in felony cases and other criminal cases resulting in a sentence of imprisonment." Id. However, the Virginia Supreme Court has emphasized that the right to effective assistance of counsel "does not guarantee that the defendant will be represented by a particular attorney," Hummel v. Commonwealth, 219 Va. 252, 258 (1978), and the United States Supreme Court has "reject[ed] the claim that the Sixth Amendment guarantees a 'meaningful relationship' between an accused and his counsel[,]" Morris v. Slappy, 461 U.S. 1, 14 (1983). Furthermore, "the right to choice of counsel 'does not

extend to defendants who require [court appointed] counsel.'" Brown, 288 Va. at 442 (alteration in original) (quoting United States v. Gonzalez–Lopez, 548 U.S. 140, 144 (2006)). "An indigent defendant cannot have his original attorney replaced unless he shows good cause." Kinard v. Commonwealth, 16 Va. App. 524, 526 (1993).

The trial court in this case heard from both Uzzle and his counsel and concluded that there was no basis for granting the "motion to withdraw." Although Uzzle stated that he was not prepared, Pandya represented that she had met with Uzzle less than ten days prior to the trial and that they were both completely prepared. She explained that they had discussed how the case would turn on credibility, had "gone through what the witness testimony would be," and had spoken about the guidelines and the Commonwealth's plea offer.[2] She explained that, although she had hoped to visit Uzzle again, she was unable to do so because of a hurricane. Based on Pandya's adamancy that both she and Uzzle were prepared for trial and the details she provided to the trial court about their preparation, we cannot say that the trial court abused its discretion in denying the motion for new counsel.[3]

---

[2] On appeal, Uzzle claims that Pandya represented to the trial court that she had prepped witnesses for trial. He claims that her statement was clearly a misrepresentation because the only witness she called was Uzzle. However, the transcript shows that Pandya only told the trial court that she and Uzzle had "gone through what the witness testimony would be," which could refer to her preparing Uzzle for the anticipated testimony of the Commonwealth's witnesses. Thus, her statement to the trial court does not appear to be a misrepresentation.

[3] We do not consider Uzzle's allegation that Pandya's prior prosecution of him created a conflict of interest in connection with this assignment of error because, as Uzzle states in his brief to this Court, the trial court was unaware of her role in the prior prosecution at the time of the motion. Moreover, Uzzle's contention that the trial court would have discovered the alleged conflict if the court had continued to inquire as to her preparedness is simply speculative. The trial court gave both Pandya and Uzzle the time and opportunity to explain why they felt they were or were not prepared, and Pandya's prior prosecution of Uzzle was never mentioned during this conversation.

Uzzle also claims that the trial court erred in not treating the motion to withdraw as a motion to continue, but he provides no authority to establish that it was error for a trial court to treat his statements to the trial court as a motion to withdraw. While he cites to London v.

B.  The Alleged Conflict of Interest

In his second assignment of error, Uzzle argues that the "trial court erred in failing to inquire into the apparent conflict of interest of the defense attorney when it learned that the same attorney had prosecuted Mr. Uzzle in a previous unrelated felony conviction."  He contends that Pandya's prior prosecution of him for his 2006 manslaughter conviction created an apparent conflict that required the trial judge "to conduct an inquiry into the extent and effect of the conflict."  In addition, he argues that the conflict of interest resulted in his having inadequate legal counsel in violation of his Sixth Amendment right to counsel and his due process rights. He maintains that "the conflict [of interest] is a structural error because it is pervasive, undermines the reliability of the entire case below and cannot be remedied."

In support of their arguments, the parties discuss four cases from the United States Supreme Court addressing conflicts of interest and the trial court's duty to inquire into the nature and extent of those conflicts:  Holloway v. Arkansas, 435 U.S. 475, 484 (1978); Cuyler v. Sullivan, 446 U.S. 335 (1980); Wood v. Georgia, 450 U.S. 261 (1981); and Mickens v. Taylor, 535 U.S. 162 (2002).

In Holloway, the petitioners, three co-defendants, were represented by the same court-appointed defense counsel in a consolidated trial.  435 U.S. at 477.  A few weeks before the trial commenced, their counsel moved for the appointment of separate counsel for each petitioner based on the possibility of a conflict of interest.  Id.  That motion was denied.  Id. Before the jury was empaneled on the day of trial, counsel again moved for the appointment of

_____

Commonwealth, 49 Va. App. 230 (2006), and Johnson v. Commonwealth, 51 Va. App. 369, 374 (2008), those cases involved requests for continuances to allow indigent defendants to replace their court-appointed counsel with new, retained counsel.  That was not the situation presented in the case at bar.  Uzzle did not request a continuance, and he did not represent to the trial court that he was planning to proceed with retained counsel.  Therefore, we cannot say that the trial court erred in treating Uzzle's statements as a motion to withdraw or in denying that motion.

separate counsel, stating "that one or two of the defendants may testify and if they do, then I will not be able to cross-examine them because I have received confidential information from them." Id. at 478. The motion was again denied. Id. On the second day of trial, defense counsel notified the court that his clients intended to testify, reiterated his concerns about representing all three defendants, and informed the court that he would be unable to protect each of their interests. Id. at 478-79. The trial court required counsel to proceed as counsel for all three defendants. Id. at 480.

Upon review, the Supreme Court noted the divergent treatment of cases involving joint representation in appellate courts where trial counsel does not alert the trial court to the potential conflict. Id. at 483. Given the facts of Holloway, however, the Supreme Court concluded that it did not need to resolve that issue. Id. at 484. Because trial counsel had repeatedly alerted the trial court to the probable conflict of interest prior to trial and "the judge then failed either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel," the Court held that the petitioners' right to the assistance of counsel was violated. Id.

Two years later, in Cuyler v. Sullivan, 446 U.S. 335 (1980), the Court again addressed a potential conflict of interest presented by joint representation of co-defendants. Sullivan had been indicted with two co-defendants for first-degree murder. Id. at 337. All three co-defendants were represented by the same two privately retained lawyers throughout the state proceedings following the indictment. Id. Neither Sullivan nor his attorneys ever objected to the multiple representation. Id. at 337-38. Sullivan was tried first and convicted, and his co-defendants were subsequently acquitted in separate trials. Id. at 338. After exhausting his state remedies, Sullivan sought habeas relief. Id. at 339.

Sullivan required the Supreme Court to answer a question not addressed in Holloway: "whether a state trial judge must inquire into the propriety of multiple representation *even though no party lodges an objection*." Id. at 345 (emphasis added). The Court recognized that, while "Holloway requires state trial courts to investigate timely objections to multiple representation[,]" Holloway did not mandate that trial courts make inquiries in every case involving joint representation. Id. at 346. It stated that "[a]bsent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist." Id. at 346-47. Accordingly, the Court concluded that "[u]nless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry." Id. at 348.

After considering the facts of the case, the Court concluded that the trial court did not have an affirmative duty to inquire about a conflict of interest. Id. at 347. It noted that none of the participants in Sullivan's trial ever objected to the joint representation, that the defendants were tried in separate trials, and that the opening statement of Sullivan's counsel "outlined a defense compatible with the view that none of the defendants was connected with the murders." Id. Under these circumstances, the Supreme Court concluded that the trial court was not required to inquire into the potential conflict created by the joint representation. Id. at 348.

In Wood v. Georgia, 450 U.S. 261 (1981), the Supreme Court applied the principles in Holloway and Sullivan to a potential conflict of interest created by a third-party's payment of the petitioners' attorney. In Wood, three defendants were convicted of distributing obscene material while working for their employer. Id. at 262. They were sentenced to probation upon the condition that they make payments toward fines, and when they failed to make those payments, their probations were revoked. Id. Although they appealed the revocations based on an alleged violation of the Equal Protection Clause, the Supreme Court did not address the merits of their

claims.  Id. at 263.  Instead, the Court remanded the case for additional findings of fact regarding a potential due process violation because the record in the case suggested "that petitioners may be in their present predicament because of the divided loyalties of their counsel."  Id.  The record showed that the petitioners had been represented throughout the proceedings by a lawyer paid by their employer, that their employer had promised petitioners legal counsel and the payment of any fines and bonds necessary, and that these promises were largely kept except for the payment of the fines that led to the revocation of the petitioners' probations.  Id. at 266.  The Court stated that these facts "suggest[ed] the possibility that [the employer] was seeking—in its own interest—a resolution of the equal protection claim raised" in the appeal.  Id. at 267.  The Court found "a clear possibility of conflict of interests on these facts."  Id.

Particularly relevant to Uzzle's appeal were the Supreme Court's statements regarding the duty of the trial court to inquire into the conflict of interest.  The Supreme Court found "that the *possibility* of a conflict of interest was sufficiently apparent at the time of the revocation hearing to impose upon the court a duty to inquire further."  Id. at 272 (emphasis in original).  In addition to the trial court's awareness in Wood of all of the facts surrounding the payment arrangement, the Court found that the trial court "must have known that it had imposed disproportionately large fines" based on an assumption that the employer would be paying them and that the trial court knew the employer-retained counsel was making a constitutional argument instead of arguments for leniency for the petitioners.  Id. at 266, 272.  Furthermore, "[a]ny doubt as to whether the [trial] court should have been aware of the problem [was] dispelled by the fact that the State raised the conflict problem explicitly and requested that the court look into it."  Id. at 272-73.  Consequently, the Supreme Court remanded the case for a determination of whether the petitioners' due process rights were violated due to their representation by the employer-paid attorney at the revocation hearing.

In Mickens v. Taylor, 535 U.S. 162 (2002), the Supreme Court examined Holloway, Sullivan, and Wood in addressing another alleged conflict of interest. In Mickens, the petitioner, who had been convicted of capital murder and then sentenced to death, filed a habeas petition claiming ineffective assistance of counsel based on his court-appointed attorney's representation of the victim on assault and concealed weapons charges at the time of the murder. Id. at 164. The attorney did not disclose to the petitioner, to his co-counsel, or to the trial court that he had previously represented the victim. Id. at 165. Before the United States Supreme Court, the petitioner argued that "where the trial judge neglects a duty to inquire into a potential conflict, the defendant, to obtain reversal of the judgment, need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." Id. at 170. The Supreme Court rejected this argument, explaining that "when the trial judge is not aware of the conflict (and thus not obligated to inquire)," the Court will only presume prejudice "if the conflict has significantly affected counsel's performance." Id. at 172-73. Because the petitioner failed "to establish that the conflict of interest adversely affected his counsel's performance," the Supreme Court affirmed the denial of habeas relief. Id. at 174.

As part of its analysis, the Court again touched on what circumstances give rise to a trial court's duty to inquire into a potential conflict of interest. The Supreme Court, relying on Sullivan's construction of Holloway, explained that the duty to inquire arises when "the trial court knows or reasonably should know that a particular conflict exists." Id. at 168 (quoting Sullivan, 446 U.S. at 347). The Supreme Court made clear, however, that the trial court has no duty to inquire when it is only "aware of a vague, unspecified possibility of conflict, such as that which 'inheres in almost every instance of multiple representation.'" Id. at 169 (quoting Sullivan, 446 U.S. at 348).

Turning to the case now before us, we hold that the trial court was not obligated under these particular circumstances to inquire into the potential conflict of interest now alleged because the trial court was only presented with a "vague, unspecified possibility of conflict." See id. While Pandya's representation of Uzzle presented the possibility of a conflict, that possibility was not "sufficiently apparent" to actually trigger a duty to inquire by the trial court. See Wood, 450 U.S. at 272. Unlike in Holloway and Wood, Pandya was not actively representing an interest that conflicted with Uzzle's, and thus her representation of Uzzle would not have immediately alerted the trial judge of a duty to inquire about a potential conflict. More significantly, no participant at the trial ever objected to Pandya's representation of Uzzle based on her role in prosecuting him years before for his completely unrelated manslaughter conviction. Although Uzzle was repeatedly given the opportunity to speak for himself about Pandya's representation (and did in fact complain about several aspects of her representation), he never told the trial judge that the reason for his dissatisfaction with Pandya's performance was her role in the unrelated prosecution approximately twelve years earlier.[4] Even assuming that the revelation of Pandya's prior prosecution of Uzzle presented the possibility of a conflict of interest in her representing Uzzle twelve years later on an unrelated separate matter, Pandya's argument at the sentencing hearing allowed the trial court to dismiss that possibility because Pandya used the information that she had learned while prosecuting Uzzle to his benefit in attempting to reduce his prison sentence. She used her prior knowledge of Uzzle to counter the

---

[4] The record is clear that Uzzle certainly was aware at least prior to the sentencing hearing of Pandya's previous prosecution of him for involuntary manslaughter twelve years earlier.

Commonwealth's argument that Uzzle had exhibited a pattern of violent behavior. [5] See Sullivan, 446 U.S. at 347-48 (holding trial court did not have an affirmative duty to inquire into joint representation where no party objected and counsel's opening statement indicated a theory of the case consistent with all the defendants' innocence). Under these circumstances, the trial court did not actually err by apparently assuming either that no conflict existed or "that [Pandya] and [Uzzle] knowingly accept[ed] such risk of conflict as may exist." See id. at 347.

Furthermore, even if the trial court had erred in failing to inquire, Uzzle would not be entitled to an automatic reversal of his conviction because he has failed to show "'an actual conflict of interest' mean[ing] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties.'" Mickens, 535 U.S. at 171 (emphasis in original). To obtain a reversal, Uzzle was required to "establish that the conflict of interest adversely affected his counsel's performance." Id. at 174; see also Beaver v. Thompson, 93 F.3d 1186, 1192 (4th Cir. 1996) ("To prevail on a claim of conflict of interest, [the defendant] must present convincing evidence of an actual conflict and a resulting adverse effect on performance.").

While Uzzle asserts that this was a "structural error" that penetrated the entire trial, he fails to specifically identify how the alleged conflict adversely affected Pandya's performance. He does not explain how her prosecution of him twelve years earlier in an unrelated case had any impact on her defense of him in the rape proceedings. The record demonstrates that the only point in the rape proceedings where Uzzle's earlier manslaughter conviction was relevant was at the sentencing hearing, and, rather than hindering Pandya's representation of Uzzle, her role as

---

[5] We note that the Commonwealth – Pandya's "former client" – never objected to Pandya's representation of Uzzle or to her using information she had learned in the prosecution of him in arguing against the Commonwealth's position here.

his prior prosecutor worked to his benefit. Pandya used the information she gained as his former prosecutor to combat the Commonwealth's argument that Uzzle's criminal record showed a pattern of violent behavior. She provided more facts about Uzzle's manslaughter conviction to argue that it truly was an accidental killing and that Uzzle had not shown a pattern over time of intentional violent behavior. She also used her knowledge about the case to tell the court about how Uzzle was highly remorseful and how he took responsibility for his actions. Consequently, because the record fails to reflect how Pandya's prior prosecution of Uzzle adversely affected her performance in the case now before us, Uzzle is not entitled to a reversal of his rape conviction.

We note that we do not hold that an attorney's former prosecution of a defendant *never* creates a conflict of interest for a future representation of that defendant in even an unrelated future matter as we limit our holding to the circumstances of this particular case. Case law from Virginia and other jurisdictions generally supports the conclusion that successive representation of the prosecution and the defense in unrelated matters does not create a *per se* conflict of interest and that the facts and circumstances of each case must be considered. See Juniper v. Commonwealth, 271 Va. 362, 391 (2006) (holding by the Supreme Court that the trial court did not err in refusing to disqualify Commonwealth's attorney who had represented the defendant ten years earlier in an unrelated matter); John Wesley Hall, Jr., Prof. Resp. Crim. Def. Prac. § 13:13 Former Prosecutors as Defense Counsel (3d ed. 2020) ("A defense attorney representing someone he or she previously prosecuted does not necessarily create a conflict of interest.").[6]

_____

[6] See also Turner v. Commonwealth, 259 Va. 816, 820 (2000) (holding by the Supreme Court that the trial court did not abuse its discretion in finding that a defense attorney's submission of an application for employment with the Office of the Commonwealth's Attorney fourteen days prior to defendant's trial did not create an impermissible conflict); Beaver, 93 F.3d at 1193 (rejecting argument that defense counsel's role as a part-time Commonwealth's attorney in a neighboring county created a *per se* conflict of interest which would disqualify the attorney); Pipkin v. United States, D.S.C. No. 4:05-CR-01129-TLW, 2015 WL 1810911, at *7 (D.S.C. Apr. 20, 2015) (holding that the fact that petitioner's counsel was a former prosecutor who had

- 14 -

Having considered the facts and circumstances of this particular case, we conclude that the trial court did not err in not inquiring into the "vague, unspecified possibility of conflict," Mickens, 535 U.S. at 169, presented by Pandya's representation of Uzzle and that Uzzle has failed to show an actual conflict of interest.

### III. CONCLUSION

In short, we cannot say that the trial court abused its discretion in denying Uzzle's motion to have his court-appointed counsel replaced with new counsel. The trial court gave Uzzle and Pandya the time and opportunity to present their arguments about their level of preparedness, and the trial court was convinced by Pandya's presentation. She told the trial court she had met with Uzzle and discussed the case, the likely witness testimony, the sentencing guidelines, and the Commonwealth's offer. She represented that Uzzle "was completely prepped for this trial" and that she had been ready for weeks. She also explained that a hurricane prevented her from returning to see Uzzle, but because he was already prepared for trial, her inability to visit him on that day did not impact their level of readiness for trial. Under these circumstances, the trial court did not err in denying the motion.

We also cannot say that the trial court erred in failing later to inquire into the "vague, unspecified possibility of conflict," as discussed by the United States Supreme Court in Mickens, 535 U.S. at 169, presented by Pandya's prior role as the prosecutor in Uzzle's completely unrelated manslaughter conviction twelve years earlier. No party ever objected to Pandya's representation of Uzzle on the grounds that she had once prosecuted him – or even alerted the

---

prosecuted petitioner in an unrelated case did not present a conflict of interest). We also note that, in some rural jurisdictions with few attorneys, there is sometimes little practical choice but to allow former prosecutors to represent defendants and that the particular facts of each case are relevant in determining whether the trial court has a duty to inquire about the existence of an actual conflict.

trial court to these circumstances until Uzzle testified at the sentencing hearing. In addition, the manner in which these circumstances were finally presented to the trial court likely would have gone a long way toward alleviating any concerns the trial court may have had about a potential conflict of interest. Pandya used the information that she had gained through prosecuting Uzzle actually to his advantage in her efforts to show that he was not a violent person. Furthermore, even if we were to assume that the trial court did err in not conducting an inquiry, Uzzle would not be entitled to a reversal of his conviction because he has not shown how Pandya's representation of him in this matter was adversely affected by the alleged conflict. The record indicates that Pandya's knowledge from her previous experience prosecuting Uzzle actually helped her represent Uzzle here – rather than hurt her representation of him.

Consequently, for all of these reasons, we affirm the trial court's conviction of Uzzle for rape.

Affirmed.